[INSTANCE COURT.]

SIXTY PIPES OF BRANDY. KENNEDY & MAITLAND, *Claimants.*

Under the Duty Act of 1799, c. 126. [cxxvi] s. 43. it is no cause of forfeiture, that the casks, which are marked and accompanied with the certificates required by the act, contain distilled spirits which have not been imported into the United States, or a mixture of domestic with foreign spirits; the object of the act being the security of the revenue, without interfering with those mercantile devices which look only to individual profit without defrauding the government.

APPEAL from the Circuit Court of Massachusetts.

This cause was argued by Mr. *Emmet,* for the *March 14th.* appellants and claimants, and by Mr. *Webster,* for the respondents.

Mr. Justice JOHNSON delivered the opinion of *March 18th.* the Court.

The libel in this case contains two allegations, and the amended or supplemental libel contains a third.

The first is, that these sixty pipes of brandy were imported from abroad, and landed in the port of Boston without a permit. The second, that they were not accompanied with the marks and certificates required by law. And the third,

that they were imported from abroad, and landed in the port of New-York without a permit.

To the first and third of these allegations, the record furnishes no evidence, nor, in fact, is it contended, that the article seized is to be visited by the penalties inflicted for those offences, otherwise than as an incident to the cause of forfeiture contained in the second allegation.

The passage of the law on which the libellants claim the forfeiture, is in these words; "and if any casks, &c. containing distilled spirits, &c. which, by the foregoing provisions, ought to be marked and accompanied with certificates, shall be found in possession of any person, unaccompanied with such marks and certificates, it shall be presumptive evidence that the same are liable to forfeiture; and it shall be lawful for any officer of the Customs, or of Inspection, to seize them as forfeited; and if, upon the trial, in consequence of such seizure, the owner or claimant of the spirits, &c. seized, shall not prove that they were imported into the United States according to law, and the duties thereupon paid or secured, they shall be adjudged to be forfeited."

The fact that these casks were accompanied with certificates is not questioned, nor that the certificates accompanying them were those which issued from the custom-house upon those identical casks. But, it is contended, that the identity of the spirits is destroyed by a large admixture of other spirits; and that, by the true construction of the law, such a change falsifies the certificate. and the casks are no longer, in the sense of

the law, " accompanied by certificates." And,
further, that such a change justified the seizure,
and wherever the seizure is just, the *onus pro-*
*bandi* is thrown upon the claimant, and he is
held to comply strictly with the words of the
law, and prove the spirits which they contain to
have been " imported according to law, and the
duties thereon paid, or secured to be paid."

1825.

60 Pipes of
Brandy.

That such a construction of the law is carry-
ing its penal effects beyond the literal meaning
of its terms, we understand no one to deny. The
words are, " if any casks containing distilled spi-
rits, which ought to be marked and accompanied
with certificates," &c. That these words must
necessarily be confined to the cask, and cannot
extend to its contents, results, we think, from re-
quiring the article to be *marked*, as well as ac-
companied with the certificate ; a requisition,
absurd in terms, if applied to the distilled spirits
contained in the casks. And although the term,
" *the same*," used in the member of the sentence
which imposes the forfeiture, might, with gram-
matical correctness, be applied exclusively to the
*cask*, and thereby produce a greater absurdity, yet
it may, with as much propriety, be applied to both
the cask and spirits as its antecedent ; and this
application is sustained by the subsequent words
of the same period ; which speak expressly and
exclusively of the " claimant of the spirits," and
leave the cask to be claimed only as an incident
to the property in the spirits.

The constituents of the offence here intended
to be visited on the claimant, obviously are,

1. That the cask should contain distilled spirits. 2. That it should be one which the law requires should be marked and accompanied with a certificate, that is, one that has been used for foreign spirits. 3. That it should be found in the possession of some person unaccompanied with the legal mark and certificates. When these three facts concur, the property is presumed subject to forfeiture; and it follows, that unless all the constituents unite in the given case, it must be a case of innocence. But the whole argument of the libellant goes to impose a fourth circumstance as essential to the imputation of innocence, and the absence of which, of consequence, must exist in order to repel the imputation of crime; which is, that the distilled spirits in the cask should be the identical spirits imported in the cask; and this, not from any necessary construction of the language of the act, but as a deduction from the supposed policy of the act.

We are induced to adopt the opinion, that even if it were consistent with the rules of construction to give a latitude to the meaning of language used in a statute so highly penal, the language of this act is so far from sanctioning the construction here contended for, that it actually repels it; for, it is observable, that when the act goes on to declare what it shall be incumbent on the defendant to establish, in order to escape the penalty of the law, the *identity* of the spirits found in the cask, with that originally imported, is not required to be proved. It is only required, that he should prove the spirits seized to have

been legally imported, and the duties paid, and whether in those casks, or any other casks, is altogether immaterial to his defence. Gin and brandy may interchange receptacles, and travel together in perfect security, provided they have been respectively legally imported, and the original certificates attend the casks to which they were originally attached.

From this, we think it conclusively results, that the government had nothing in view but the security of its own revenue, without interfering with those devices of the mercantile world which look only to individual profit without defrauding the government; and hence, that the spirit and policy of the 43d section would carry us no further than its express letter.

But there are other views of this subject which raise other questions in adjudicating on this cause. And, first, it is very obvious, that if the change of the contents of the cask could invalidate the immunities of the certificate in other cases, it could not in the case where *domestic* spirits have been substituted for that imported. If the evidence establishes any adulteration in this case, it proves it to have been made by the addition of American spirits to the imported brandy. But when the act imposes upon the claimant the necessity of proving " that the spirits found in the casks were imported into the United States according to law, and the duties thereon paid or secured," it could not have intended to impose an actual impossibility, by requiring such proof as to spirits which, *ex vi ter-*

*mini,* were not imported. Much less could it have intended to leave open a chance of defence, where the substitution was of foreign liquors, upon which it might, by possibility, have been defrauded, and preclude all defence as to domestic spirits, a trade in which, coastwise or in any wise, was perfectly harmless, and could not have produced a fraud upon the revenue.

But, although the libellant may have failed on his second count, he is entitled to all the benefit which the law allows him under his first and third. And here the case rests upon the general provisions of the 50th, 70th, 71st, and some other sections of the Revenue Law, under which the Collector was certainly justifiable in making any seizure, where he had reasonable ground to suspect that a fraud upon the revenue, or a violation of the revenue laws, was meditated. And upon showing probable cause for such seizure, the *onus probandi* is thrown upon the claimant. Whatever was the fact, the certificates of the numerous individuals who examined this brandy, and testified to its equivocal nature, were sufficient to attract the Collector's attention, and justify his instituting an inquiry to determine whether this brandy, notwithstanding the certificates, had actually paid the duty. The brandy which had paid the duty, might, by possibility, have been drawn off, and other brandy substituted that had evaded the duty. It would be too much, also, to hold him to a correct construction of laws, which have excited doubts and elicited contrary opinions in Courts of justice. The claimant, there-

fore, upon the general provisions of the Collec-
tion Law, was properly called upon to furnish
an explanation of circumstances calculated to
excite reasonable suspicion. After comparing
the mass of testimony which the case affords, we
are led to the conclusion, that the claimant has
successfully repelled the charge of illicit impor-
tation. If, as before observed, the brandy was not
the identical brandy imported in these casks in
which it was seized, still all the evidence goes to
prove that it was in part the same, and in part
consisted of neutral spirits, which spirits two of
the witnesses call American. Illegal importa-
tion, therefore, is out of the case. And the views
which we have taken of the subject render it
unnecessary to examine the question, whether the
evidence establishes the fact of adulteration or
not.

Deeree of condemnation reversed, with a cer-
tificate of probable cause.