## THE CARGO EX LADY ESSEX.

*(District Court, E. D. Michigan. July 15, 1889.)*

1. CUSTOMS DUTIES — UNLOADING CARGO WITHOUT PERMIT — VESSEL DRIVEN ASHORE.

   A vessel which has been driven ashore by stress of weather has not "arrived" within the limits of the collection district, within the meaning of Rev. St. U. S. § 2867, and the unlading of her cargo without authority of the customs officer does not subject it to forfeiture.

2. SAME — FAILURE TO GIVE NOTICE.

   The failure to give notice of the contingency which makes such unlading necessary does not authorize a forfeiture of the cargo.

**3. SAME—FORFEITURE—ACT OF TRESPASSER.**
   A forfeiture of goods for a violation of the revenue laws will not be imposed unless the owner of such goods or his agent has been guilty of an infraction of such laws. The act of a mere trespasser, or of one having no interest in the goods, will not have that effect.

*(Syllabus by the Court.)*

In Admiralty. On exceptions to libel on information.

This was an information against 8,000 feet of lumber, being the cargo of the schooner Lady Essex, a forfeiture of which was claimed upon two grounds: *First*, that the lumber had been unladen from the schooner Victor without a permit; *second*, that this lumber had been fraudulently and knowingly imported into the United States without payment of duties, and contrary to law.

The information averred, in substance, that the schooner Victor, laden with a large quantity of lumber, and bound from a Canadian to an American port, arrived within the limits of the collection district of Port Huron, and was there stranded; that 8,000 feet of her cargo were sold to the master of the schooner Lady Essex, and were unladen from the Victor upon the Essex before the Victor had been duly authorized by the customs officers to unload, contrary to Rev. St. § 2867; that although this might have been a case of unavoidable accident, necessity, or stress of weather, yet neither the master of the Victor, nor the master of the Essex, gave notice to the collector or any officers of customs of the unloading of such lumber, nor did the master of the Victor comply with any of the provisions of section 2867; that the lumber so unladen was received upon the Lady Essex with the consent and procurement of her master, although the notice and proof required had not been given; that the said lumber was subject to a duty of two dollars per thousand, yet the master of the Lady Essex, knowing that such duty had not been paid, fraudulently and knowingly assisted in importing such lumber into the United States, and concealed such lumber in the hold of his vessel, proceeding from where the Victor was stranded to Mt. Clemens, where he began to unload his cargo without reporting to the customs that he had such lumber on his vessel, although he knew the duty had not been paid; and that the same was thus imported contrary to law.

The information prayed for a forfeiture of the Lady Essex and of her cargo. The owner of the cargo excepted to the information upon the ground that it set forth no cause of action against his property.

*C. P. Black*, U. S. Dist. Atty.

*H. H. Swan*, for claimant.

BROWN, J. By Rev. St. § 2867, if after the arrival of any vessel within the limits of a collection district any part of her cargo shall be unladen without authority of a customs officer, the master in command shall be liable to a penalty of a thousand dollars, and the merchandise so unladen shall be forfeited, except in case of unavoidable accident, necessity, or stress of weather. In such case, it is made the duty of the master, or other person in command, to make proof upon oath before

the customs officer of such accident, necessity, or distress; and by section 2868, if any merchandise so unladen shall be put or received into any other vessel, except in the case of such accident, necessity, or distress, to be so notified and proved, the master of any such vessel, in which the merchandise shall be so put and received, shall be liable to a penalty, and the vessel in which they shall be so put shall be forfeited.

It is clear that there was no arrival of the Victor within the meaning of section 2867, since "a vessel is not considered to arrive so as to be regarded as importing her cargo unless she arrives within a port, and with an intent to enter her cargo." *Harrison* v. *Vose*, 9 How. 381. It is not enough that she comes within the limits of the district. *U. S.* v. *Vowell*, 5 Cranch, 372. So it is clear that goods taken and unloaded from a foreign vessel wrecked upon the coast are not subjected to a forfeiture because landed without a permit. *The Gertrude*, 3 Story, 68; *Peisch* v. *Ware*, 4 Cranch, 347; *The Concord*, 9 Cranch, 387; *Merritt* v. *Merchandise*, 30 Fed. Rep. 195.

The stranding of the Victor made a clear case of unavoidable accident, necessity, or stress of weather, within the meaning of this section, and the only irregularity in the proceeding was the failure to give notice to the customs authorities of such contingency. No forfeiture, however, is imposed for the failure to give such notice, though it would seem from the following section that the vessel receiving such lumber from the stranded vessel incurs the penalty of forfeiture, and the master of such vessel a penalty of treble the value of the merchandise. While it is possible that section 2867 might be construed by inference to work a forfeiture of the cargo where no notice has been given of accident, necessity, or distress, still although the statute may not be subject to the strict construction of a penal one, a forfeiture ought not to be imposed unless the language will bear no other reasonable construction. *Sixty Pipes of Brandy*, 10 Wheat. 421; *U. S.* v. *Carr*, 8 How. 1; *U. S.* v. *Coils of Cordage*, Baldw. 502.

So far as a forfeiture is claimed by reason of the goods having been smuggled into the United States at Mount Clemens, or, in the language of the statute, having been knowingly and willfully imported into the United States, contrary to law, the case depends upon different considerations. The authorities are direct to the proposition that the forfeiture of goods for violation of the revenue laws will not be imposed unless the owner of such goods, or his agent, has been guilty of an infraction of such laws. *Peisch* v. *Ware*, 4 Cranch, 347, 364; *The Waterloo*, Blatchf. & H. 120; *651 Chests of Tea* v. *U. S.*, 1 Paine, 507; *U. S.* v. *Bags of Kainit*, 37 Fed. Rep. 326.

It is clear that if goods be stolen from the owner, or if a person has obtained possession of them fraudulently, or without authority, no act of his can forfeit them as against the true owner. Section 16 of the act of 1874 declares in express terms, that, in cases of this description, it is the duty of the judge to submit to the jury, as a separate and distinct proposition, whether the alleged acts were done with an actual intention to defraud the United States; or if such issues be tried by the court with-

out a jury it shall be the duty of the court to pass upon and decide such proposition as a distinct and separate finding of fact. This language must apply to the owner of the goods, or his authorized agents, and not to a mere trespasser.

It is claimed in this case that the master of the Victor had no authority to sell this lumber to the master of the Lady Essex, without communicating with its owner. And in this connection, counsel relied upon the case of *Cargo of the Bridgewater*, 11 Chi. Leg. N. 327, and upon *Navigation Co.* v. *Morse*, L. R. 4 P. C. 222. If it should turn out that this lumber did not belong to the master of the Victor, and that he made sale of it without communicating with the owner, and without his knowledge or consent, it would follow that the purchaser took no title; and I see no escape from the conclusion that he could do no act with respect to the lumber to the prejudice of its real owner. But the question in this case is not what are the facts, but whether the information avers a cause of forfeiture. In setting forth a delivery and sale of the lumber to the master of the Lady Essex, I think I am bound to presume that the sale took place under such circumstances as to constitute it a legal sale, and that the master of the Victor should be presumed to have had authority to make such sale. It results, then, that this defense should be set up by answer, and made the subject of proof upon the hearing.

The demurrer is therefore sustained as to the first ground of forfeiture, and overruled as to the second.