Marshall, Ch. J.,
 

 delivered the opinion of the court as follows : — In these cases, two questions are to be decided by the court. 1st. Is the cargo of the Favourite, or any part of it, forfeited to the United States? 2d. Are Ware and others entitled to any, and if to any, to what salvage ?
 

 The first count in the first libel filed on the part of the United States claims the brandies, wines and cordials therein mentioned, in consequence of their being found in the possession of certain persons therein named, unaccompanied *with such marks and certificates as are required by law, the duties thereon not having been paid, or secured to be paid. The second count claims them as forfeited, because they were removed, without the consent of the collector, before the quantity and quality of the said wines and spirits, and the duties thereon, were ascertained according to law; the duties thereon not having been paid or secured. The third count *359]
 
 *215
 
 claims them, because they were found concealed, the duties not having been paid or secured according to law.
 

 The second libel claims certain other goods, which were parcel of the cargo of the Favourite, as forfeited, by being found unlawfully concealed, the duties thereon not having been paid or secured.
 

 The facts of the case are these: The ship Favourite, belonging to Mr. Peisch, of Philadelphia, was discovered, about the last of October, adrift in the Bay of Delaware, with her masts gone by the board, and without anchors, cables or rudder, and in danger of being carried out to sea. A company was formed to save the vessel and cargo ; and with considerable labor, in the course of several days, the cargo was unladen and landed at Lewes, a small town on the bay, not a port of delivery, where it was, with the approbation of the collector, left under the care and in the custody of a revenue officer residing at that place, who was one of the party that had originally taken possession of the vessel, and under whose direction the whole business had been in a great measure conducted. On the 3d of November, while the salvors were unlading the vessel and landing the cargo, an imperfect entry was made by the owners or consignees, after which an award was made between the owners and salvors, by which the salvors were allowed one-half the cargo. The owners were dissatisfied with this award, and refused to acquiesce under it. The collector ordered the goods, which had been in the custody of a revenue officer, to be carried to Wilmington for the purpose of '‘•'ascertaining the amount of duties. p3„. The salvors objected to this, and requested that the duties might be *■ ascertained at Lewes, offering at the same time to pay the duties on the moiety of the cargo claimed by them under the award. The collector persisting in his determination to remove the goods to Wilmington, the salvors sued out a writ of replevin from the state court, and by force of that writ, took the goods out of the possession of the revenue officer. This act is the foundation of the forfeiture alleged in the libels.
 

 The forfeiture said to be occasioned by the goods being found without the marks and certificates required by law, depends upon the 48d section of the act for collecting duties, and on other sections of the same act, which are explanatory of the 43d section. The particular clause giving the forfeiture is in these words: “ And if any casks, chests, vessels or cases, containing distilled spirits, wines or teas, which by the foregoing provisions ought to be marked and accompanied with certificates, shall be found in possession of any person, unaccompanied with such marks and certificates, it shall be presumptive evidence that the same are liable to forfeiture.” The law then authorizes a seizure, and subjects such distilled spirits, &c., to forfeiture, unless it be proved at the trial, that they were imported according to law, and that the duties were paid or secured. The objects of this clause are those vessels only which, “ by the foregoing provisions,” ought to be marked and accompanied with certificates. To determine its extent, the “ foregoing provisions” must be looked into.
 

 This subject is first taken up in the SUh section of the act. That section directs particular and additional entries to be made of distilled spirits, wines and teas, which provisions are adapted to regular importation, not to those articles when saved from a wreck.
 

 The entry is to be made by the importer or consignee, and specifications
 
 *216
 
 are required which can only be given by the owner-or consignee, when in possession of the papers relative to the vessel and cargo. If a vessel be *3311 !|!wreo^e^ on coast, the cargo must be lost, or brought on shore, -* without the knowledge of the owner, or consignee, so as to put it in his power to make the entry, and the salvors are not only not the persons designated by the law to make, but they will often not possess the information which would enable them to make it. The act proceeds to require that this entry shall be transmitted to the surveyor of the port where the delivery of the cargo is to commence, to whom also every permit for unlading or landing any part of the cargo must be previously produced, who shall record the same, and indorse thereon the word “ inspected,” the time when, and his own name. Goods landed previous to these formalities are to be forfeited.
 

 These regulations obviously respect a regular importation, where all these prerequisites to landing may be performed ; not cases where a landing must take place without them. To suppose them applicable to salvage goods, would be to suppose that the legislature designed to prohibit salvage entirely, or to forfeit the cargoes of all vessels which might be wrecked on the coast.
 

 The 38th section requires that all distilled spirits, wines and teas, shall be landed under the inspection of the surveyor, or other officer acting as inspector of the revenue for the port, and therefore, can relate only to cases of regular importation at the port of delivery, where the revenue officer may superintend the landing. He is directed to attend at all reasonable times, not at all places. The 39th section prescribes the duty of the officer of inspection of the port where the spirits,
 
 &o.,
 
 may be landed. He is to ascertain the duties, and mark the casks. The 40th section directs the surveyor, or chief officer of inspection of the port or district in which the said spirits, wines or teas shall be landed, to give the proprietor, importer or consignee a general certificate ; and the 41st section directs him to give a particular certificate *for each vessel, which certificate passes with the vessel to *362] the purchaser. These sections are connected with those which precede them, and relate to regular importations, where the spirits, &c., are landed under a permit, at a port of delivery, and there is a proprietor, importer or consignee, or an agent to whom the certificates may be granted; not to spirits, &c., which may, from the nature of things, lawfully get into the possession of individuals without the knowledge of a revenue officer. The 42d section only directs that blank certificates shall be provided.
 

 These are the sections which precede that which is supposed to give the forfeiture claimed under this count of the libel. The first part of the 43d section directs the proprietor, importer or consignee, who may receive the said certificates, to deliver them with the vessels to the purchaser ; and then comes the clause which subjects to forfeiture all vessels containing spirits, &e., which may be found unmarked and not accompanied by certificates, which by the foregoing provisions ought to be marked and accompanied by certificates.
 

 In the foregoing provisions, the legislature, in the opinion of this court, did not intend to comprehend wrecked goods, or goods found under circumstances like those in the Favourite, where the vessel was deserted by her crew, and where it might be necessary, for the preservation of the goods, to take them to the nearest accessible part of the coast. Either these spirits
 
 *217
 
 and wines would have been liable to forfeiture, if brought to land under the most pressing circumstances, where inevitable loss must attend any delay, if a revenue officer should not be present to take possession of them, or the single circumstance of their being found unmarked and unaccompanied with certificates, is not in itself sufficient to forfeit them.
 

 The opinion of the court, that it was not the intention of the legislature to subject goods, under such circumstances, to forfeiture, is not formed exclusively *on the extreme severity of such a regulation. It is formed pggg also on what is deemed a fair construction of the language of the L several sections of the law, which seems not adapted to cases like the present.
 

 The second count in the libel claims the goods as forfeited, because they were, without the consent of the proper officer, removed from the place where they were deposited, before the amount of duties was ascertained, the duties at that time not being paid or secured. Neither this count, nor the first, supposes any forfeiture to have been incurred by the landing of the goods, or the unlading of the vessel. The spirits and wines are presumed to have been legally brought on shore, and it is the removal only which gives title to the United States. The court, therefore, is to inquire, whether these goods were under such circumstances, that a removal, such as has taken place in this case, will produce a forfeiture. This depends on the 51st section of the law, in expounding which it becomes proper to notice the 50th also. This section prohibits the unlading of any vessel, or the landing of any goods, without a permit granted by the proper officers, and subjects the master or other person having the command of such vessel, and all those who shall be concerned in unlading, removing, or storing such goods, to heavy penalties, and the goods themselves to forfeiture.
 

 It was well observed, that the application of this section to cases where the goods must perish, if not immediately brought on shore, and to cases in which a permit cannot regularly be granted, would be not only to prohibit, but to punish every attempt to save a cargo about to be lost on the coast. This construction of the law could only be made, where the words would admit of no other. But it is unquestionably a correct legal principle, that a forfeiture can only be applied to those cases in which the means that are prescribed for the prevention of a forfeiture may be employed. The means prescribed to save the forfeiture given in the 50th section cannot be employed, where a vessel is deserted by her crew, or cannot be brought into port. The permit cannot be obtained, nor can those steps which must precede the attainment *of a permit be taken. Upon just legal construe- , tion, then, the landing of these goods, without a permit, did not sub- *- ject them to the forfeiture of the 50th section. This act is not within the law. The 50th section is calculated for cases in which the general requisites of the law can be complied with, not for salvage goods, in cases where those general requisites cannot be complied with.
 

 The 51st section relates to the removal of goods from the wharf or place on which they may have been landed, in conformity with the directions of the 50th section. It presupposes a permit, and that they were landed under the inspection of a revenue officer, in the manner prescribed by the 38th section. It presupposes a case in which the gauging and marking may be done, and the other means prescribed for the ascertainment of the duties
 
 *218
 
 and security of the revenue may be taken, at the place of landing; not a case in which a landing must be made, without a permit, often in the absence of a revenue officer, and where the goods could not be permitted, without extreme peril, to remain at the place of landing, until these measures should be taken.
 

 The court is also of opinion, that the removal for which the act punishes the owner with a forfeiture of the goods, must be made with his consent or connivance, or with that of some person employed or trusted by him.
 

 If, by private theft, or open robbery, without any fault on his part, his property should be invaded, while in the custody of the officer of the revenue, the law cannot be understood to punish him with the forfeiture of that property. In the 5 2d section, therefore, to which the revenue officers seem to have intended to conform, so far as the case would admit, which directs them in the case of an incomplete entry, to store the goods at the risk and expence of the owner or consignee, no forfeiture is annexed to their removal, unless the penalties of the 51st section, or of the 43d section, be applied to the 5 2d.
 

 The court is of opinion, that those penalties cannot be so applied in this *365] case, not only because, from the whole *tenor of the law, its provisions appear not to be adapted to goods saved from a vessel, under the circumstances in which the Favourite was found, but because also, the law is not understood to forfeit the property of owners or consignees, on account of the misconduct of mere strangers, over whom such owners or consignees could have no control.
 

 It has been urged on the part of the United States, that although the property of the owner should not be forfeited, yet that moiety which is claimed by the salvors has justly incurred the penalties of the law. But if the award rendered in this case be not binding, the salvors could have only a general claim for salvage, such as a court might allow ; and if it be binding, still they acquired no title to any specific property. Their claim was in the nature of a general lien, .and any irregular proceeding on their part, would rather furnish motives for diminishing their salvage, if that be not absolutely fixed by the award, than ground of forfeiture. The irregularity, too, if any, which has been committed by them, being merely an attempt to assert, in a course of law, a title they supposed themselves to possess, and with no view to defraud the revenue, this court would not be inclined to put a strained construction on the act of congress, in order to create a forfeiture.
 

 The third count in the first libel, and the second libel, claim a forfeiture on the allegation that the goods were concealed. The fact does not support this allegation. There was no concealment in the case.
 

 Taking all the circumstances into consideration, it is the unanimous opinion of the court, that no forfeiture has been incurred, and that the libels filed on the part of the United States were properly dismissed.
 

 The next question to be considered is, to what amount of salvage are the salvors entitled ? That their claim is good for something, is the opinion of all the judges ; but on the amount to be allowed, the same unanimity does not prevail.
 

 *Eor the
 
 quantum
 
 of salvage to be allowed, no positive rules are fixed. It depends on the merit of salvors, in estimating which, a va
 
 *219
 
 riety of considerations have their influence. In the case before the court, the opinion of the majority is, that the sentence of the circuit court ought to be affirmed. This opinion, however, is made up on different grounds. Two of the judges are of opinion, that the award was fairly entered into, and although both parties might be mistaken with respect to the obligation created by the law of Delaware, yet there is no reason to suppose any imposition on either part; nor is there any other ground, on which the award can be impeached or set aside. Two other judges, who do not think the award obligatory, view it as the opinion of fair and intelligent men, on the spot, of the real merit of the salvors, and connecting it with the testimony in the cause, are in favor of the salvage which has been awarded, and which has been allowed by the sentences of the district and circuit courts. Three judges are of opinion that the award is of no validity, and ought to have no influence. They think the conduct of the salvors, in taking the goods out of the possession of the revenue officer, though by legal process, is improper, and that the salvage allowed is too great. They aóquiesce, however, cheerfully in the opinion of the majority of the court, and express their dissent from that opinion, solely for the purpose of preventing this sentence from having more than its due influence on future cases of salvage.
 

 The sentence of the circuit court is affirmed, without costs.