## MOODY v. McKINNEY.
## MORTON v. McKINNEY.

FORFEITURE—DISPENSARY LAW—LIQUORS.—A horse, buggy and harness belonging to one who did not participate in, consent to, or have knowledge of, or has not negligently or voluntarily permitted his property to be in the custody and control of another under circumstances which would reasonably lead him to apprehend that the property would be used in transporting liquors in the night time, is not subject to confiscation, under Crim. Code, 594.

*Peisch* v. *Ware,* 4 Cranch, 347, and *Dobbins Distillery* v. *United States,* 6 Otto, 395, *distinguished from this case.*

Before GARY, J., Oconee, March, 1905.    Affirmed.

Two actions in claim and delivery (1) John M. Moody against J. T. McKinney, and (2) P. P. McDaniel and John A. Morton against same.    From judgment for plaintiff, defendants appeal.

*Messrs. Jaynes & Shelor,* for appellants, cite: 36 Fed. R., 84; 9 Ben., 529; 2 How., 233; 8 Otto, 395.

*Messrs. Stribling & Herndon,* contra.    *Mr. Herndon* cites: Crim. Code, 594; 52 S. C., 179; 39 Fed. R., 765; 37 Fed. R., 326; 12 Wheat., 486; 96 Fed. R., 479; 44 Fed. R., 796; 30 Fed. R., 79; 15 Fed. R., 382; 17 Blatchf., 325; 4 Div. L., 1; 59 L. R. A., 737; 29 L. R. A., 808; 31 L. R. A., 165.

March 9, 1906.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    The above entitled actions were commenced before A. P. Crisp, magistrate, on the 24th day of December, 1904, for claim and delivery of personal property. As both cases grew out of the same transaction and involve the same state of facts, they were tried together.    The plaintiff, John M. Moody, sued for the recovery of the possession of one black mare of the value of $75, and the plaintiff, John

A. Morton, sued for the recovery of one top buggy, one set of buggy harness and one lap robe, of the value of $64.30. The cases were tried together before A. P. Crisp, magistrate, and a jury, on the 23d day of January, 1905. The jury found a verdict in favor of the plaintiff, John · M. Moody, for the possession of the property sued for, or $75, the value thereof, and in favor of the plaintiff, John A. Morton, for the possession of the property sued for, or $64.30, the value thereof.

Motion for new trial was made in each case and the same refused by the magistrate. The defendants appealed, in each case, to the Circuit Court. The appeal came on to be heard before his Honor, Ernest Gary, presiding Judge, at the March, 1905, Term of the Court of Common Pleas. The appeals were dismissed and the judgments of the magistrate's court affirmed by the following order of the Circuit Court:

"Upon hearing the appeal in each of the above entitled actions, I find that during the night of the 23d of December, 1904, the black mare described in the complaint of the plaintiff, John M. Moody, and the buggy, harness and lap robe, described in the complaint of John A. Morton, were seized from George Morton and A. L. Rowland, who were violating the dispensary law by transporting contraband liquors at night. I am satisfied from the testimony, and so find, that the liquors being transported by said parties were contraband liquors at the time of seizure by J. T. McKinney and P. P. McDaniel as State constables, and that said property was used by them in transporting said liquors. The plaintiffs in the above entitled actions, however, are not George Morton and A. L. Rowland, but are John A. Moody, who claims to be the owner of the mare, and John A. Morton, who claims to be the owner of the buggy, harness and lap robe. The testimony fails to show that either John M. Moody and John A. Morton participated in any way in transporting said contraband liquors or had any knowledge that their property was being used by George Morton and A. L. Rowland for

any such purpose. I do not think plaintiffs could be deprived of their property unless they participated in such unlawful use of their property or gave consent for such use, and for this reason alone do I refuse to sustain the appeal.

"It is, therefore, ordered, that the judgment of the magistrate's court, in each of the above entitled actions, be affirmed."

The appellants question this ruling, and contend that property used in transporting contraband liquors at night is liable to seizure and confiscation without regard to whether the owner participated in, consented to, or had knowledge of such unlawful use. The defendants justify their seizure of said property and right to possession thereof under sec. 594 of the Criminal Code, which is as follows: "Any wagon, cart, boat, or any other conveyance, together with horses, mules, or other animal or animals and harness, accompanying the same, transporting liquors at night, other than regular passenger or freight steamers and railway cars, shall be liable to seizure and confiscation, and to that end the officer shall cause the same to be duly advertised and sold and the proceeds sent to the State Treasurer."

We do not regard that the constitutionality of this statute is involved in this appeal, as it does not appear that such question was submitted to or considered by the Circuit Court. The real question is whether the case made falls within the intention of the statute. The rule of construction which should govern in this case is thus aptly stated in *United States* v. *Kirby,* 7 Wall., 482, 486: "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the Legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter. The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted, 'That who ever drew blood in the streets should be punished with

the utmost severity,' did not extend to the surgeon who opened the vein of a person who fell down in the street in a fit. The same common sense accepts the ruling cited by Plowden, that the Statute of 1st Edward, which enacts that a prisoner who breaks prison shall be guilty of a felony, does not extend to a prisoner who breaks out when the prison is on fire—'for he is not to be hanged because he would not stay to be burnt.' And we think that a like common sense will sanction the ruling we make, that the act of Congress which punishes the obstruction or retarding the passage of the mail, or of its carrier, does not apply to a case of temporary detention of the .mail caused by the arrest of the carrier upon an indictment for murder." See, also, *Riggs* v. *Palmer,* 5 L. R. A., 340, and note.

A like rule of construction was early applied in this State in a case, *Ham* v. *McClaws,* 1 Bay, 93, in which a forfeiture was sought under the act of 1788, prohibiting the importation of slaves by land or water before January 1, 1793, under penalty of forfeiture of such slaves. The letter of the act embraced the case made, but the Court held that it was not within the intention of the Legislature to make a forfeiture of slaves brought into this State under the peculiar circumstances detailed in that case, as such construction would be against common right and reason. Applying this rule to the case in hand, we hold that, notwithstanding the generality of language used, the Legislature did not intend to declare a forfeiture of property belonging to one who did not participate in, consent to, or have knowledge of, the unlawful use made of his property by the party violating the statute, or has not negligently or voluntarily permitted his property to be in the custody and control of the person transporting contraband liquor in the night time under circumstances which would reasonably lead him to apprehend that such unlawful use would be made of his property. It appears in this case from the undisputed testimony that the horse was taken from the premises of John M. Moody, claimant, when he

was not at home and had no knowledge of what the parties wanted the horse for.

It seems perfectly clear that the statute could not be held to cover a case in which the owner's property was stolen from him or obtained through fraud or trespass and then used by another in such unlawful manner, and yet the statute makes no such exception in express language. So, also, it should be held that the Legislature did not intend to declare a forfeiture of property in a case where the owner is not chargeable with any fault or negligence with reference to the custody and use of his property. Otherwise, the owner, without the slightest knowledge on his part, might have his carriage and horses confiscated by the casual and secret act of his driver in transporting therein contraband liquor, or the farmer who places his stock or team in custody of a laborer for farm uses might have his property subject to forfeiture by the act of another, which he could not anticipate or control.

We are aware that some cases in the Federal Courts, with reference to forfeitures declared in maritime and revenue laws, regard the *property* as the offending party, and forfeitures are sustained without regard to the innocence of the owner and from the necessity of the case, but we will not push this doctrine to the extent of holding that property is the offender, even though its owner is in no wise connected with its unlawful use by knowledge, acquiescence, fault or power of control. This view we do not regard as really in conflict with the points decided in the cases of *Peisch* v. *Ware,* 4 Cranch, 347, 2 L. Ed., 643, and *Dobbins Distillery* v. *United States,* 6 Otto, 395. In the first named case it was held that, under a statute of Congress providing for a forfeiture under the revenue laws for goods improperly imported, the owner of goods cannot forfeit them by an act done without his consent or connivance, or that of some person employed and trusted by him. In the case of *Dobbins Distillery* v. *United States, supra,* the Court held that the owner of real estate and other property leased for the pur-

poses of a distillery and with knowledge of the lessee's inten-
tion to use the premises to carry on that business, and that
he did use the same for that purpose, is liable under the reve-
nue laws of Congress to a forfeiture of said property for the
unlawful and fraudulent acts and omissions of the distiller,
even if he was ignorant of such fraudulent acts and omis-
sions. In the last mentioned case the owner of the property
voluntarily leased it for the purpose of a business, when
he knew, or ought to have known, that forfeiture would
follow if the business was not conducted as required by law.

The judgment of the Circuit Court is affirmed.