**UNITED STATES v. ONE DODGE TRUCK et al.**

**No. 2403.**

District Court, D. Wyoming.

Dec. 12, 1934.

Thomas F. Shea, Asst. U. S. Atty., of Cheyenne, Wyo.

Ewing T. Kerr, of Cheyenne, Wyo., for petitioner in intervention.

KENNEDY, District Judge.

The above-entitled cause is in the nature of a libel directed against one Dodge truck. After the issuance of the writ of monition and attachment, one J. W. Mumford filed his petition in intervention as the owner of the truck, seeking its recovery.

The suit came on for final hearing, and evidence was introduced by the parties. The facts concerning the transaction involving the seizure of the truck by the government and its ownership are not in dispute. They are summarized by counsel for the petitioner, which summary has been accepted by counsel for the government, as follows: "J. W. Mumford, the petitioner in intervention, is the owner of said truck, and is engaged in the sheep business in the vicinity of Raymond, Idaho. He, the said petitioner, employs several men in his business, and operates trucks and vehicles in the carrying on of said enterprise. On the 11th day of June, 1934, William Mumford, son of petitioner, and one of the employees of said petitioner, drove said truck, hereinbefore mentioned, to the town of Border, Wyoming, for the purpose of obtaining gasoline and other supplies. While in the town of Border, he, the said William Mumford, loaned said truck to one Ellis W. Nuttall, who in turn drove said truck to Cokeville, Wyoming, and upon his return was accosted by certain Revenue Officers of the Government, and it was later determined that the said Nuttall was using said truck in transporting a quantity of whiskey upon which the Revenue tax had not been paid. The truck was immediately seized, and has been, since said date, and now is, in the custody of libellant. The said petitioner was not acquainted with Nuttall, nor did he come in contact with said Nuttall until a few days after said truck was seized. The evidence is undisputed that petitioner had given his employees instructions not to loan his trucks or other vehicles to any third party and such instructions had been given to his son, William Mumford, on sundry and divers occasions, and that said truck was loaned to the

said Nuttall by the said son of the petitioner in violation of said instructions."

The case has been submitted on oral argument and written trial briefs.

In the foregoing circumstances, it is the contention of the government that it is entitled to a decree of forfeiture, confiscation, and sale of the truck; while the petitioner in intervention, as owner, maintains that the libel should be dismissed and the truck returned to him.

The relief sought by the government is asserted under 26 USCA § 1181 (R. S. § 3450). Matters similar to the one here in controversy have been before the federal courts repeatedly, and, while the facts in individual cases vary to some extent, they are sufficiently similar to have seemingly justified a uniform method of disposition, and yet such decisions are not entirely in harmony. It has become necessary, therefore, to consider these decisions in the light of what has been said by our Supreme Court upon the subject, in order to arrive at a solution of the problem in the case at bar.

It has always been the contention of the executive and enforcement branch of the government under this and similar revenue statutes that the thing itself, as in this case the truck, shall be considered the offender, and that, when such offense is once established, the rights of individuals in the property must be disregarded. The courts have not uniformly adopted this view in toto. Perhaps the first break away from the ironclad rule to one of a more liberal type may be found in the case of Peisch v. Ware, 4 Cranch, 347, 2 L. Ed. 643. There the government sought forfeiture of goods under revenue laws similar to the one here in question, which, as here, reserved no rights in the property to innocent owners. Chief Justice Marshall, at page 364 of 4 Cranch, 2 L. Ed. 643, made the following statement:

"The court is also of opinion that the removal for which the act punishes the owner with a forfeiture of the goods must be made with his consent or connivance, or with that of some person employed or trusted by him.

"If, by private theft, or open robbery, without any fault on his part, his property should be invaded, while in the custody of the officer of the revenue, the law cannot be understood to punish him with the forfeiture of that property."

Undoubtedly the most cited case of recent years decided by the Supreme Court upon the point here involved is that of Goldsmith, Jr.-Grant Co. v. United States, 254 U. S. 505, 41 S. Ct. 189, 65 L. Ed. 376. The case arose under the same statute which is here invoked, and a brief statement of the facts is as follows: The Grant Company, as the seller of automobiles, was the seller of an automobile which had been seized by revenue officials. The car had been previously sold and delivered to the purchaser, but title retained in the seller for the unpaid purchase money. The purchaser in this situation used the car for the removal, deposit, and concealment of a quantity of liquor, which use was without the knowledge of the selling company or its officers or without any notice or reason to suspect that it would be so illegally used. The Supreme Court under these circumstances sustained the forfeiture, and in the discussion of the point by Mr. Justice McKenna at page 511 of 254 U. S., 41 S. Ct. 189, 191, the following appears: "But whether the reason for section 3450 [26 USCA § 1181] be artificial or real, it is too firmly fixed in the punitive and remedial jurisprudence of the country to be now displaced. Dobbins' Distillery v. United States, 96 U. S. 395, 24 L. Ed. 637, is an example of the rulings we have before made. It cites and reviews prior cases, applying their doctrine and sustaining the constitutionality of such laws. It militates, therefore, against the view that section 3450 is not applicable to a property whose owner is without guilt. In other words, it is the ruling of that case, based on prior cases, that the thing is primarily considered the offender. And the principle and practice have examples in admiralty. The Palmyra, 12 Wheat. 1, 6 L. Ed. 531."

Again, at page 513 of 254 U. S., 41 S. Ct. 189, 191, the court concludes the opinion with the following significant language: "It is the illegal use that is the material consideration, it is that which works the forfeiture, the guilt or innocence of its owner being accidental. If we should regard simply the adaptability of a particular form of property to an illegal purpose, we should have to ascribe facility to an automobile as an aid to the violation of the law. It is a 'thing' that can be used in the removal of 'goods and commodities' and the law is explicit in its condemnation of such things."

The contention of the petitioner in the case at bar is considered at pages 511, 512 of 254 U. S., 41 S. Ct. 189, 191, in the following language:

"Counsel resists the reasoning and precedent of these cases in an argument of considerable length erected on the contention of the

injustice of making an innocent man suffer for the acts of a guilty one, and the anxious solicitude a court must feel and exercise, and which, it is said, it has often expressed, and by which it has been impelled to declare laws unconstitutional that offend against reason and justice.

"The changes are rung on the contention, and illustrations are given of what is possible under the law if the contention be rejected. It is said that a Pullman sleeper can be forfeited if a bottle of illicit liquor be taken upon it by a passenger, and that an ocean steamer can be condemned to confiscation if a package of like liquor be innocently received and transported by it. Whether the indicated possibilities under the law are justified we are not called upon to consider. It has been in existence since 1866, and has not yet received such amplitude of application. When such application shall be made it will be time enough to pronounce upon it. And we also reserve opinion as to whether the section can be extended to property stolen from the owner or otherwise taken from him without his privity or consent."

The concluding paragraph of the above quotation has probably given rise to the contentions in this class of cases in attempting to bring them within the classification which the Supreme Court itself says it has not yet passed upon. It is urged here that the Supreme Court as late as 1926, in United States v. One Ford Coupé, 272 U. S. 321, 47 S. Ct. 154, 71 L. Ed. 279, 47 A. L. R. 1025, adhered to the view that it had not yet passed upon a case involving the situation where the owner of a vehicle was without his own volition rendered the victim of an incident in which the vehicle was being used to remove, deposit, or conceal distilled spirits, as evidenced by the language found on page 333 of 272 U. S., 47 S. Ct. 154, 158: "The suggestion is made that in this view of section 3450 [26 USCA § 1181] there may be a forfeiture where a stranger has surreptitiously deposited or concealed the liquor in the vehicle while in the possession and use of the owner, or has obtained possession of the vehicle by theft and then made such use of it. But we are not here concerned with such a state of facts, and therefore may dismiss the suggestion by repeating what was said of like possibilities pressed on our attention in the Goldsmith, Jr.-Grant Co. Case (page 512 [of 254 U. S., 41 S. Ct. 189, 65 L. Ed. 376]): 'Whether the indicated possibilities under the law are justified we are not called upon to consider. It has been in existence since 1866, and has not

yet received such amplitude of application. When such application shall be made it will be time enough to pronounce upon it; and we also reserve opinion as to whether the section can be extended to property stolen from the owner or otherwise taken from him without his privity or consent.' "

The lower federal courts, so far as the Supreme Court pronouncement is concerned, are left in the position of attempting to draw a reasonable analogy between the case before them and the intimated exception laid down in the Goldsmith, Jr.-Grant Case, supra. We do know that there the Supreme Court sustained the libel and forfeiture as against an actually innocent title owner, but we have the situation of the vehicle having passed into the possession of the offender by a voluntary act of the owner. As it appears to this court, this at present must be considered as the line of demarcation for the lower courts to follow, should they otherwise feel inclined to relax the so-called strict rule in cases involving theft or situations of a similar import.

Applying this rule to the circumstances in the case at bar, we find that here, while there is no consent on the part of the owner of the automobile that it would be used in the commission of an offense, nor is there any evidence which would justify a suspicion that it would be so used, yet the vehicle had voluntarily and by his consent passed out of his possession and into the possession of another through whose instrumentality the opportunity for the offense was consummated. I have not been able to bring myself to the conclusion that the facts in the case at bar establish a situation which the Supreme Court had in mind as being reserved for future consideration and decision as involving innocent owners without voluntary act on their part. Any relaxation of the strict rule must be narrowly limited in cases of this character, else the measures of the government enacted for the protection of its revenues would have many loopholes.

Counsel for the petitioner strongly rely upon the case of United States v. One Reo Speed Wagon, 5 F.(2d) 372 (D. C. Mass.), which, although under a different revenue statute, presents an almost identical set of facts as in the case at bar. There the libel was not sustained. On appeal the same case was affirmed in United States v. Almeida, 9 F.(2d) 15 (C. C. A. 1), but on a different point than that upon which the trial court had decided it. The appellate court did, however, in a portion of its opinion, which must in the circumstances be regarded as obiter,

indicate its views as being in harmony with the trial court upon the point which is here involved.

In United States v. One Buick Roadster (D. C.) 280 F. 517, denial of forfeiture was ordered where a car had been sold but delivery delayed until the balance of the purchase money had been paid, during such time the car being placed in the hands of a third party as bailee, and while there the purchaser, without the knowledge or consent of either the seller or the bailee, entered th bailee's premises and took the automobile. While it was being used by him, the seizure took place on account of the removal, deposit, and concealment of liquor. This action on the part of the purchaser in taking the car was equivalent to a theft of the vehicle which very logically would have justified the action of the court in relaxing the strict rule. That it would not apply, however, under circumstances as in the case at bar, is reasonably justified by the language of the learned judge on page 519 of 280 F., as follows: "It is of government's first duties to protect the individual from the trespasser and the thief. When it fails therein, what principle of conduct, custom, law, or justice will permit it to aggravate its fault and magnify his loss by forfeiture of his property, the thing of the trespass or theft? A case of misuse by a bailee affords no analogy. The bailee has possession with the owner's consent, the trespasser or thief without it, each the antipodes of the other. The owner takes the hazard of his voluntary act, and responds over for his bailee's misuse of the thing."

Of similar import is the language of the court in the case of United States v. One Saxon Automobile (C. C. A.) 257 F. 251, at page 252, particularly the final clause: "This rule of construction has been extended without dissent to protect the innocent owner of property from forfeiture, even when provided by a statute which expresses no limitation or exemption of any kind, where the property has been taken by a trespasser or a thief, or the owner has been deprived of the possession by forces of nature beyond his control. This is for the reason that no right of possession or custody can be acquired by or from a trespasser or thief, or by virtue of the forces of nature against the will of the owner. In such case, the owner of the property has never in a legal sense parted with any right of custody or possession, and hence no statute can operate against his title by reason of the use or custody or possession of the thief or trespasser, or his deprivation of it by the forces

of nature. This reasoning obviously does not apply when the owner voluntarily parts with his possession and intrusts his ship or vehicle to another, for in that case the owner is charged with knowledge that the person to whom he has relinquished possession, or some one acquiring the possession from him, may so use the property as to defeat the collection of the revenue, and thus bring it under the condemnation of forfeiture. While the principle is not elaborated, this we think was the distinction in the mind of Chief Justice Marshall in Peisch v. Ware, 4 Cranch, 347, 2 L. Ed. 643."

In United States v. One Lincoln Touring Car (D. C.) 11 F.(2d) 551, a situation arose under similar revenue statutes which in many respects is identical with facts in the case at bar. There forfeiture was sustained and the doctrine announced in the One Reo Speed Wagon Case was rejected. The Goldsmith, Jr.-Grant Case, supra, is apparently taken as the guiding star, and the analogy is expressed in the language at page 553 of 11 F.(2d): "The only substantial difference between the facts in the Goldsmith Case, on the one hand, and the facts in Reo Speed Wagon Case, and in the case at bar on the other hand, is that the illegal use was by the taker in the Goldsmith Case and by the subtaker in the Reo Speed Wagon Case and the case at bar. The taking in all three cases was with the consent of the owner."

By the foregoing discussion, it is apparent what the decision in the case at bar must be. In order to justify any relaxation of the strict rule which requires the forfeiture of the thing itself independent of the rights of innocent parties, even though such rule has not been officially sanctioned by the Supreme Court, it must affirmatively appear that the offending property must have passed out of the individual hands of the owner without any voluntary action on his part and without his consent, and that, in addition, he must have had no knowledge or ground to believe that the property was used, or to be used, in the commission of an offense. Such a rule is not satisfied by the facts here, because the offending property was being used voluntarily and with the consent of the owner through his authorized agent and likewise with the consent of the agent, although not with any knowledge on the part of the owner or his agent of its offending use.

As has been said in some of the cases. there may be mitigating circumstances which would justify government officials in applying relief under departmental rules author-

ized in confiscation cases, but that is not for this court to decide.

For the reasons stated, the petition and claim of the petitioner in intervention will be overruled and denied, and a decree of forfeiture may be entered in favor of the libelant, with costs to be taxed, reserving to the petitioner proper exceptions.