**William Q. WALKER, Jr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV276–102.**

United States District Court,
S. D. Georgia,
Brunswick Division.

Sept. 23, 1977.

Terry L. Readdick, Taylor, Bishop & Lee, Brunswick, Ga., for plaintiff.

William T. Moore, Jr., U. S. Atty., Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAWRENCE, District Judge.

On January 25, 1971, plaintiff sold a Beachcraft Baron aircraft, ID # N214V, to Alfred William Harrison for a $10,000 downpayment and a $35,000 chattel mortgage. The Bureau of Customs seized the plane on January 27th on the ground that it was being used in the illegal importation of marijuana. Harrison was convicted of Customs violations. The Government has stipulated that Walker, who sold the aircraft to Harrison, was innocent of any wrongdoing in respect to the crime.

Plaintiff petitioned for remission of forfeiture. Pursuant to the statute and Regulations (19 U.S.C. § 1618; 19 C.F.R. § 23) and Bureau of Customs Circular ENF–4–PEN, November 29, 1967, the aircraft was

released to plaintiff on May 10, 1071, upon receipt of his check for $9,592.84. That amount represented the appraised value of the aircraft less Walker's security interest. Plaintiff stopped payment on the check and the Beachcraft was reseized on June 5, 1971. Customs again released the aircraft to plaintiff on July 22, 1971, upon the receipt of the amount of $9,592.84 paid by certified check. The payment was made by Mr. Walker under protest. Subsequently he brought the present action against the United States. The suit is in two counts. The first is based on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* Plaintiff alleges that the payment made of $9,592.84 in order to recover the aircraft constitutes a deprivation of property without due process and further that the Government was negligent in storing and caring for it in the course of the seizure which resulted in damages exceeding $10,-000.

Jurisdiction under Count Two is predicated upon the Tucker Act, 28 U.S.C. § 1346(a)(2). It is alleged that the seizure by Customs created an implied bailment and that the damage by negligent storage of the aircraft did not exceed $10,000.[1]

The Government has moved for summary judgment. Oral argument was held on June 23, 1977. Both sides filed extensive briefs with accompanying affidavits.

## COUNT ONE

### A. *The Negligence Claim*

 Plaintiff alleges in the Federal Tort Claims action that the Government's negligent care of the aircraft during the six months it was in custody of Customs caused damages exceeding $10,000. The statute of limitations for claims under that Act is two years. 28 U.S.C. § 2401(b). Proper presentment is made when Customs receives written notification. 28 C.F.R. § 14.-2(a); *Steele v. United States*, 390 F.Supp. 1109 (S.D., Cal.). In order to maintain an action under FTCA, the plaintiff must present timely written notice to the appropriate agency. See *Young v. United States*, 372 F.Supp. 736 (S.D., Ga.).

The aircraft was originally released to plaintiff on May 10, 1971. The claim for damages was received by the Government on May 16, 1973, after the statute of limitations had run. Upon oral argument on the Government's motion for summary judgment, counsel for Mr. Walker conceded that the negligence feature of Count One is barred.

### B. *The Due Process Claim*

Plaintiff argues that his deprivation of property claim is not barred by the statute and presents a due process issue which is not precluded by any exception in the Act.

### 1. *The Statute of Limitations*

The two year statute of limitations applies to the due process claim. The filing of an administrative claim is a jurisdictional prerequisite to a proceeding under the Tort Claims Act. *Rosario v. American Export-Isbrandtsen Lines, Inc.*, 531 F.2d 1227 (3rd Cir.), cert. den., 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135. To come within the statute of limitations, the claim must be presented within two years after the claim arises. 28 U.S.C. § 2401(b). The Regulations define *presentment* as follows, 28 C.F.R. § 14.2(a):

> "For purposes of the provisions of section 2672 of Title 28, United States Code, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. . . ."

The Government contends that the entire claim arose on May 10, 1971, when the plane was first released to the plaintiff. If such

---

1. The Tucker Act confers original jurisdiction over claims not exceeding $10,000 "upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1346(a)(2).

is the case, plaintiff's constitutional claim would be barred since the Government did not receive notice thereof until May 16, 1973.

On the other hand, plaintiff maintains that the claim of deprivation of due process did not arise until July 22, 1971, when he paid the appraised value and took possession of the aircraft. Under that view, the notice of the claim is within the period of the statute of limitations. The Government replies that the May 16th claim was insufficient and that the requisite information was not received until August, 1975.[2]

■ An administrative claim filed without a sum certain is insufficient to confer jurisdiction on the courts. *Allen v. United States*, 517 F.2d 1328 (6th Cir.). Such a claim is a nullity and does not toll the running of the statute. *Avril v. United States*, 461 F.2d 1090 (9th Cir.). Here, however, plaintiff made a claim for $20,000 which was received by Customs on May 16, 1973. The record does not reveal the supporting evidence submitted by plaintiff in 1975, but the May 16, 1973 claim appears to satisfy the minimal statutory and regulatory requirements.

■ The period of limitations does not begin to run until plaintiff has the right to enforce his cause of action. *Dore v. Kleppe*, 522 F.2d 1369 (5th Cir.); *United States v. One 1961 Red Chevrolet Impala Sedan*, 457 F.2d 1353 (5th Cir.). This Court finds that plaintiff's constitutional claim arose on July 22, 1971, when he gave Customs a certified check for return of the aircraft. It follows that notice of the administrative claim on May 16, 1973, was within the statute of limitations.

2. *The Tort Claims Exception to Governmental Liability*

The Government contends that the due process claim falls within the following exception to liability under the Federal Tort Claims Act (28 U.S.C. § 2680):

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

. . . . .

(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer."

The issue here is whether the due process claim is one "arising in respect of . . . the detention of any goods." Plaintiff argues that his claim does not fall within the exception since it arose *after* the detention of the aircraft. In support of this position, counsel cites *Sarkisian v. United States*, 472 F.2d 468 (10th Cir.) and *Boston v. Stephens*, 395 F.Supp. 1000 (E.D., Ohio). These cases are inapposite. They deal with the requirement of promptitude by Customs under 19 U.S.C. § 1603 and unwarranted delay amounting to a violation of due process.[3]

The cases cited by the Government are not particularly helpful to the inquiry. See *United States v. One (1) 1972 Wood, 19 Foot Custom Boat*, 501 F.2d 1327 (5th Cir.); *United States v. 1500 Cases, More or Less*, 249 F.2d 382 (7th Cir.); *S. Schonfeld Co., Inc. v. SS Akra Tenaron*, 363 F.Supp. 1220 (D.S.C.); *States Marine Lines, Inc. v. Shultz*, 359 F.Supp. 512 (D.S.C.); *United States v. Articles of Food*, 67 F.R.D. 419 (D.Idaho). In all of these cases claims for loss or damage to goods while held by Customs were dismissed. Here, plaintiff seeks to recover the payment he made for return of the aircraft rather than damages to the aircraft. In *Alliance Assurance Co. v. United States*, 252 F.2d 529 (2nd Cir.) it was held that misplaced goods are not detained goods and do not come within the excep-

---

2. See letter from Customs to plaintiff's counsel of May 31, 1973, Gov't. Ex. B; letter from plaintiff's counsel to Customs dated July 14, 1975, Gov't. Ex. C; and letter from Customs to plaintiff's counsel dated August 4, 1975, Gov't. Ex. D.

3. See also *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822; *United States v. A Quantity of Gold Jewelry*, 379 F.Supp. 283 (C.D., Cal.).

tion. The reasoning in that case, however, has not been followed by other courts.[4]

It would seem that the deprivation claim would come within the literal language of the exception because it grows out of the "detention" of the aircraft. On the other hand, such a claim does not appear to be of the character sought to be excepted in the statute. The Fifth Circuit has suggested that the solution is to show an unconstitutional forfeiture under the Tucker Act. *United States v. One (1) 1972 Wood, 19 Foot Custom Boat, supra,* 501 F.2d 1327. However, a decision on this issue is not necessary.

### 3. *The Due Process Issue*

The essence of this claim, as expressed in plaintiff's brief, is "to recover damages for the willful exaction of money from him as a condition precedent to the return of his extremely valuable aircraft." Applying applicable regulations, the Secretary remitted forfeiture of the aircraft upon plaintiff's payment of the difference between the appraised value of the aircraft and his equity interest. The statute provides that the Secretary may remit a forfeiture "upon such terms and conditions as he deems reasonable and just." 19 U.S.C. § 1618.[5]

Neither side has cited, and I have not found, a case which involves the validity of the terms or conditions of a remission. A review of recent forfeiture cases lends a degree of guidance. In *United States v. U.S. Coin and Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434, the Government sought forfeiture of cash used in a bookmaking operation under 26 U.S.C. § 7302. Examining the history of the forfeiture statutes, the highest Court noted the uneasy balance between traditional forfeiture doctrine and the Fifth Amendment. The Court concluded, however, that § 7302 must be read in conjunction with the forfeiture statutes regarding remission procedures.[6] "When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." 401 U.S. at 721–22, 91 S.Ct. at 1045. Read alone, this language would seem to require criminal participation on the part of one whose property is forfeited under the federal forfeiture statutes. The Supreme Court subsequently upheld the forfeiture of smuggled stones although the owner was acquitted of the charge of smuggling. *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438. In its per curiam opinion, the Supreme Court held that acquittal under § 545 did not result in collateral estoppel as respects forfeiture. Apparently distinguishing *Coin & Currency,* it noted that forfeiture under § 1497 was not criminal in nature. 409 U.S. at 236, n. 6, 93 S.Ct. 489. "The § 1497 forfeiture is intended to aid in the enforcement of tariff regulations. It prevents forbidden merchandise from circulating in the United States, and, by its monetary penalty, it provides a reasonable form of liquidated damages for violation of the inspection provisions and serves to reimburse the Government for investigation and enforcement expenses." 409 U.S. at 237, 93 S.Ct. at 493.

In *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452, the Supreme Court limited its holding in *Coin & Currency.* That case

---

4. See, *e. g., S. Schonfeld Co., Inc. v. SS Akra Tenaron,* 363 F.Supp. 1220 (D.S.C.).

5. Where judicial proceedings are instituted, the Secretary's authority is transferred to the Attorney General. Executive Order No. 6166 (June 10, 1933). For uniformity, I will refer to action taken pursuant to this statute as that of the Secretary. See *United States v. One 1970 Buick Riviera,* 463 F.2d 1168 (5th Cir.), cert. den. *sub nom., National Bank of New Orleans v. United States,* 409 U.S. 980, 93 S.Ct. 314, 34 L.Ed.2d 244.

6. Under 26 U.S.C. § 7327, forfeitures under the internal revenue laws may be remitted or mitigated under 19 U.S.C. § 1618, the same remission statute involved in this case. The Fifth Circuit has said that "This Court has previously refused to extend *Coin & Currency* beyond the self-incrimination privilege to the due process clause." *United States v. Various Gambling Devices,* 478 F.2d 1194, 1198.

involved the Puerto Rican forfeiture statute[7] as applied to an innocent lessor's boat which was seized and forfeited after its lessees were apprehended with marijuana on board. The Court said that forfeiture seizure is an "extraordinary situation" which justifies delay of notice and hearing. Reviewing the history and the case law of forfeiture statutes, it held that forfeiture statutes are not unconstitutional because they may apply to the property of innocent parties. *Coin & Currency*, said the Court, "did not overrule prior decisions that sustained application to innocents of forfeiture statutes, like the Puerto Rican statutes, not limited in application to persons 'significantly involved in a criminal enterprise.'" 416 U.S. at 688, 94 S.Ct. at 2094.

The Court noted that forfeiture proceedings could present grave constitutional issues. It said (416 U.S. at 689–90, 94 S.Ct. at 2094–95):

"Mr. Chief Justice Marshall intimated as much over a century and a half ago in observing that 'a forfeiture can only be applied to those cases in which the means that are prescribed for the prevention of a forfeiture may be employed.' *Peisch v. Ware*, 4 Cranch 347, 363, 2 L.Ed. 643 (1808). It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. See, *id.*, at 364; *Goldsmith-Grant Co. v. United States*, 254 U.S. [505], at 512 [41 S.Ct. 189 at 191, 65 L.Ed. 376]; *United States v. One Ford Coupe Automobile*, 272 U.S. [321], at 333 [47 S.Ct. 154, at 158, 71 L.Ed. 279]; *Van Oster v. Kansas*, 272 U.S. [465], at 467 [47 S.Ct. 330, at 334, 71 L.Ed. 354]. Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive. Cf. *Armstrong v. United States*, 364 U.S. 40, 49 [80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554] (1960).

But in this case appellee voluntarily entrusted the lessees with possession of the yacht, and no allegation has been made or proof offered that the company did all that it reasonably could to avoid having its property put to an unlawful use. Cf. *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 596 [82 S.Ct. 987, 991, 8 L.Ed.2d 130] (1962)."[8]

The Fifth Circuit Court of Appeals has considered the applicability of *Coin & Currency* and *Calero-Toledo* in several forfeiture cases. A year after the former decision was handed down, that Court held that the Attorney General's decision not to remit was not reviewable and that intervenor's due process claims were without merit. *United States v. One 1970 Buick Riviera*, 463 F.2d 1168, cert. den. *sub nom. National Bank of New Orleans v. United States*, 409 U.S. 980, 93 S.Ct. 314, 34 L.Ed.2d 244. In that case, a Bank held a chattel mortgage on a vehicle confiscated for transporting heroin. The Attorney General denied remission under 19 U.S.C. § 1618. The Fifth Circuit held that where the Attorney General had exercised his discretion under the statute, his decision is not subject to review. In denying petitions for rehearing and rehearing *en banc*, the Court said: "We considered then and we consider now that our decision is wholly consistent with *Coin & Currency*, which recognizes power in the Secretary of the Treasury to return proper-

---

7. "(a) The following shall be subject to forfeiture to the Commonwealth of Puerto Rico:

(4) All conveyances, including aircraft, vehicles, mount or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in clauses (1) and (2) of this subsection . . . ." Title 24, § 2512(a)(4). The Court remarked upon the similarity between the Puerto Rican statute and 21 U.S.C. § 881(a). See 416 U.S. at 686, n. 25, 94 S.Ct. 2080, 2093.

8. See Clark, "Civil and Criminal Penalties and Forfeitures: A Framework for Constitutional Analysis," 60 *Minn.L.Rev.* 379, 494–96 (1976).

ty but 'upon such terms and conditions as he deems reasonable and just.'" 463 F.2d at 1171. Thus, it is clear that the Fifth Circuit does not read *Coin & Currency* as mandating criminal participation by one whose property is forfeited.

Citing *One 1970 Buick Riviera* and *Calero-Toledo*, the Fifth Circuit again rejected an innocent party's due process claim in *United States v. One (1) 1972 Wood, 19 Ft. Custom Boat*, 501 F.2d 1327. There the offending boat was seized by Customs for transporting marijuana. The innocent lessor refused to pay the $400 storage fee and the boat was forfeited. The Fifth Circuit affirmed the forfeiture in a per curiam opinion. "These points," it said, "have been raised and rejected in numerous forfeiture cases."

In another per curiam opinion, the Fifth Circuit affirmed the forfeiture of a car used to haul counterfeit federal reserve notes. *United States v. One 1969 Plymouth Fury Automobile*, 476 F.2d 960, cert. den., 423 U.S. 838, 96 S.Ct. 65, 46 L.Ed.2d 57. In that case the owner of the car had made a $100 downpayment. The finance company's equity exceeded the value of the vehicle. The Court felt bound by prior precedents and affirmed the forfeiture. Over a dissent by six judges, the Fifth Circuit denied petitions for rehearing and for rehearing *en banc*. See 509 F.2d 1324, cert. denied, 423 U.S. 838, 96 S.Ct. 65, 46 L.Ed.2d 57. In the per curiam denial, the majority cited, without discussion, *Calero-Toledo*. The dissent considered that case to be distinguishable from *Coin & Currency* because the Puerto Rican statute in *Calero-Toledo* lacked a remission statute comparable to § 1618.[9]

■ The decisions of the Fifth Circuit indicate that a majority of that Court limits *Coin & Currency* and reads *Calero-Toledo* as permitting forfeiture of the property of innocents. This view is reflected in the decisions of other circuits as well. See, *e. g.*,

*United States v. One 1972 Mercedes-Benz 250*, 545 F.2d 1233 (9th Cir.) (21 U.S.C. § 811); *United States v. One 1971 Mercedes Benz 2-Door Coupe*, 542 F.2d 912 (4th Cir.) (49 U.S.C. § 781); *United States v. One 1972 Toyota Mark II*, 505 F.2d 1162 (8th Cir.) (21 U.S.C. § 881). See also *United States v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421 (2nd Cir.) (21 U.S.C. § 881); *United States v. One Clipper Bow Ketch*, 548 F.2d 8 (1st Cir.) (21 U.S.C. § 881; 49 U.S.C. § 781).

■ If the property of an innocent owner or lienor may be forfeited without a denial of due process, the return of property to the holder of a chattel mortgage upon payment of the difference in appraised value and his equity interest is certainly not a denial of due process. The payment of the difference prevents a lien holder from reaping a windfall. Suppose that one has an equity interest of $35,000 in seized property valued at $50,000. If the Attorney General remits the forfeiture for $15,000, the difference in the appraised value and the equity interest, the lien holder's position is the same as before the seizure. That, of course, is the position in which Mr. Walker finds himself. He held an equity interest of $35,000 in a plane appraised at $45,000 (which he had sold for $45,000 only six months previously). For a payment of approximately $10,000, plaintiff received the aircraft. The fact that he subsequently sold the aircraft for only $35,000 does not alter the perspective.

■ It should be noted that the authority of this Court to review the terms of remission set by the Secretary is questionable. It is clear that his denial of a petition to remit is not reviewable. *United States v. One 1972 Mercedes-Benz 250*, 545 F.2d 1233 (9th Cir.); *United States v. One 1970 Buick Riviera, supra*, 463 F.2d 1168, 1170 (5th Cir.), cert. denied *sub nom.*; *National Bank of New Orleans v. United States*, 409 U.S. 980, 93 S.Ct. 314, 34 L.Ed.2d 244; *Griekspoor v.*

---

9. Forfeiture of the property of innocents "is barbaric, a vestigial relic of deodand." 509 F.2d at 1325 (Wisdom, J., dissenting). The "vestigial relic" is, however, hardy and perduring. Less than a month ago, the Fifth Circuit

reaffirmed its holdings that good faith or innocence is immaterial in a seizure of a vehicle under the narcotics statutes. *United States v. One 1975 Ford F100 Pickup Truck*, 558 F.2d 755.

*United States*, 433 F.Supp. 794 (M.D., Fla.). See also *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192, holding that the Administrative Procedure Act does not impliedly grant subject-matter jurisdiction for review of agency action.

This Court concludes that plaintiff's unconstitutional deprivation claim under the Federal Tort Claims Act must be dismissed. The same rationale would lead to a dismissal of the deprivation claim if brought under the Tucker Act, 28 U.S.C. § 1346(a)(2).

### COUNT TWO

Plaintiff alternatively bases jurisdiction on the Tucker Act. He contends that the seizure created an implied contract of bailment bringing it within that legislation. It is argued that the Government, as bailee, breached the contract of bailment by negligent storage of the aircraft and is liable for the damage thereby caused.

 Does a seizure by the Government in a forfeiture proceeding constitute a contract of bailment implied in fact? [10]

Plaintiff relies on *Alliance Assurance Company v. United States*, 252 F.2d 529 (2nd Cir.). There goods were being inspected by Customs to determine if they were invoiced properly. The importer was given claim tickets for the goods. When the property disappeared, the importer brought suit. The Second Circuit Court of Appeals held that jurisdiction existed under the Tucker Act on the theory of a contract of bailment implied in fact.

Here there was no inspection of goods in the care of Customs. There was a seizure of the aircraft because of suspected violations of the Customs laws. An inspection and a seizure are two different things, creating two different relationships.

**10.** To confer jurisdiction under the Tucker Act, an implied contract must be one implied in fact rather than one implied in law. *Merritt v. United States*, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643.

**11.** "A bailment is a delivery of goods or property for the execution of a special object, beneficial either to the bailor or bailee, or both; and

The Government argues that a seizure does not create, under Georgia law, a bailment relationship.[11] A more direct approach is that the act of forfeiture vests the right to the property in the United States, depriving the owner of further property rights in same, at least until remission of the forfeiture. The Supreme Court has said:

> "[W]henever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offence is committed; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith."
> *United States v. Stowell*, 133 U.S. 1, 16–17, 10 S.Ct. 244, 247, 33 L.Ed. 555.

See also *Calero-Toledo v. Pearson Yacht Leasing Co.*, supra, 416 U.S. 694, 94 S.Ct. 2080 (Douglas, J., dissenting); *United States v. One 1967 Chris-Craft 27 Ft. Fiber Glass Boat*, 423 F.2d 1293 (5th Cir.).

The statute under which the Government proceeded in this case provides that all offending vehicles "shall be seized and forfeited. . . ." 19 U.S.C. § 1595a(a). Under the holding in *Stowell* and the mandatory language of the forfeiture statutes, the right to the aircraft vested in the Government at the time of the importation of marijuana. With a right to title, subject only to judicial determination, no bailment could be created by the seizure of the aircraft since that relationship does not arise where there is a transfer of title.

upon a contract, express or implied, to carry out this object and dispose of the property in conformity with the purpose of the trust." Ga. Code Ann. § 12–101. Apparently, the Government contends that a seizure is not a delivery and that therefore no bailment could have been created.

Militating in favor of this argument is the Congressional policy of exempting Customs from liability against tort claims arising out of detention of goods. There is no similar exception in the earlier Tucker Act which deals with contract claims, express or implied. By the nomenclatural device of characterizing the same facts as a breach of an implied bailment contract rather than a tort, plaintiff would hold the Government liable under the Tucker Act. If that is the law, it is an even bigger ass than Mr. Bumble supposed. However, the law does not support plaintiff's theory. Seizure of property used in violation of the law does not give rise to an express or implied contract. See *Bielecky v. United States*, 26 F.2d 746 (E.D., N.Y.).

Since there is no express or implied contract, this Court lacks subject matter jurisdiction under the Tucker Act. Count Two of the complaint must be dismissed.

### ORDER

No genuine and material issue of fact exists in this case. Defendant's motion for summary judgment is granted as to both Counts and judgment will issue dismissing the complaint.