## UNITED STATES v. ONE FORD V-8 TRUCK et al.

### No. 2525.

District Court, D. Wyoming.

Dec. 31, 1936.

440

Carl L. Sackett, U. S. Atty., and John C. Pickett, Asst. U. S. Atty., both of Cheyenne, Wyo.

Albert D. Walton, of Cheyenne, Wyo., for intervener Robert A. Boyd.

Francis P. Matthews and William P. Kelley, both of Omaha, Neb., for intervener Securities Investment Corporation.

KENNEDY, District Judge.

This is a libel suit seeking to declare a forfeiture as to certain property alleged to have been used in connection with the operation of an illicit distillery located on a ranch in eastern Laramie county, Wyo. After the issuance of the usual writ of monition and attachment and the requisite advertisement in connection therewith, one Robert A. Boyd interposed his petition in intervention as the owner of the Ford truck with the contents thereof consisting of 3,500 pounds of sugar, 1½ tons of coke, and 500 empty cans, the same being but a portion of the property herein libeled. The Securities Investment Corporation, a corporation organized under the laws of Nebraska, with its principal place of business at Omaha, also filed a petition in intervention claiming an interest in said truck by virtue of a chattel mortgage securing certain notes upon which there remained due the sum of $427.32, said notes and mortgage having been purchased from the Sample-Hart Motor Company from whom the owner, Boyd, had a short time previously purchased said truck.

While the claim of the Investment Corporation might not technically be filed before a forfeiture has been declared, yet, for the purpose of convenience and to expedite a hearing involving all claims in the proceeding, no point was raised as to this irregularity and the evidence in support of the libel and the intervener's claims was heard at the same time by the court.

First as to the forfeiture. The evidence shows that the truck loaded with the sugar, coke, and cans was traced by the government agents from Omaha to the vicinity of a remote ranch off the main Lincoln Highway traversing the state of Wyoming, some 28 miles east of the city of Cheyenne. The operators of the truck,

when nearing the ranch property, turned off the headlights of the truck and were thereafter accosted by government agents. They purported to be having trouble with the lighting system thereon, but declined to allow the agent, who had not disclosed his identity, to assist in repairing the lights. The drivers then proceeded past the ranch where a still was subsequently found in a barn a short distance from where the truck was later located by the government agents as having been abandoned upon the highway. The truck was later brought to the ranch where the still was located and quantities of sugar, coke, and cans of a character corresponding to those in the truck were found. Upon the doorframe of the barn were found red paint stains having been scraped off of some moving object in the entrance to or exit from the barn which were identical in color with the paint on the truck. A chip of wood was found near the entrance to the barn which fitted into a hole found in the body of the truck. The parties driving the truck were testified to as being relatives of the owner, Boyd. Previous to the date when the truck was apprehended, it had been traced from Omaha where tin cans were being loaded or discharged therefrom, but upon that occasion it had been lost at a point in Nebraska and was not then traced to its destination.

This is but a brief outline of some of the testimony supporting the libel, but it is all-sufficient to support the logical conclusion that the truck and the contents were being used, or intended for use in conducting the illicit distillery at the ranch where it was apprehended. The telltale marks upon the doorframe and the chip from the body of the truck found near the barn show beyond question that it had been previously used in connection with the operations at the still. The court so found at the conclusion of the hearing but deferred the entry of a decree until all matters involved could be disposed of in one judgment. It must therefore follow that the order of forfeiture will be decreed and the claim of the owner, Boyd, dismissed. The decree will relate as well to all the other property libeled in regard to which no claim has been made.

The principal point of interest in the controversy rests in the claim of the intervener Securities Investment Corporation through the mortgage upon the truck. This claim is made by virtue of the Act of August 27, 1935, § 204 (27 U.S.C.A. § 40a), which reads as follows:

"§ 40a. *Remission or mitigation of forfeiture of vehicle or aircraft; possession pending trial.*

"(a) *Jurisdiction of court.* Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquors, such forfeiture is decreed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture.

"(b) *Conditions precedent to remission or mitigation.* In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

This act was evidently intended as remedial legislation to relieve against the hard and fast rules concerning the forfeiture of property against so-called "innocent" claimants or lienholders. Previously through a long line of decisions construing the Revenue Acts it had been held by the courts that the vehicle itself was

442

the offender and there could be no relief to owners or lienholders. Situations of this character were reviewed by this court and this conclusion reached in United States ·v. One Ford Truck, 3 F.Supp. 283, and United States v. One Dodge Truck, 9 F.Supp. 157, in which cases the decisions of the Supreme Court and the lower federal courts were reviewed.

■ This latest legislative enactment must therefore be considered and construed in the light of the previous legislative and judicial declarations surrounding the forfeiture of property found to be used in violation of the internal revenue laws. By this legislation the Congress has laid down specific regulations through which innocent claimants may be permitted to protect their respective interests in such property.

An outline of the evidence in the instant case upon this particular phase of the controversy is as follows: Some time in July, 1936, Boyd purchased the truck from the Motor Company, by trading in a car of a different make, paying some upon the purchase price and giving notes secured by a mortgage on the vehicle for the balance. Shortly thereafter the Motor Company negotiated a sale of the paper to the Investment Corporation which by its agents made an investigation of the financial responsibility and reliability of Boyd through one of the local credit agencies. A report was made to the official of the Investment Corporation conducting the investigation that Boyd had previously had dealings in the community, including the purchase of other automobiles at a previous time, and that generally he had met his obligations and that his credit was entitled to a fair rating. The Investment Corporation thereupon purchased the paper at a fair and reasonable price and paid the Motor Company the agreed consideration therefor. One of the government agents in connection with the Alcohol Tax Unit located in Omaha testified in the government case in chief without objection, that Boyd there had the record and bore the reputation of a bootlegger; that he had been arrested by the police of Omaha for violation of liquor laws; that the records show he had given a bond for his appearance and had forfeited said bond by failing to appear at the hearing; and that he was known in that community as a violator of the liquor laws for a considerable period of time. Evidence was offered on behalf of the claimant that a search of the federal and state court records in Omaha failed to disclose that Boyd had ever been prosecuted in any of those courts, although search of the police court records was not made. This search of the records, however, occurred after the truck had been apprehended and was no part of a process taken by the Investment Corporation previous to the purchase of the paper by it.

■ The question is, whether this evidence is sufficient to establish the Investment Corporation as an innocent claimant in contemplation of section 40a, supra. There can be no doubt the claimant has shown under subdivision (b) (1) that it had an interest in the vehicle which it had acquired in good faith and under (b) (2) that it had no knowledge or reason to believe that the vehicle was being used or would be used in violation of the liquor laws. It therefore remains to be considered as to whether or not the intervener discharged its required duty under subdivision (b) (3). In this subdivision the right of a claimant concerns a contract with any person having a record or reputation for violating the liquor laws of the state or nation. If such a condition ,be presented, it would then seem to become incumbent upon a claimant in order to maintain his interest in the vehicle absolved from any taint in connection with the acquiring of such interest to show that he has taken certain steps before the consummation of his contract, to wit: To have made inquiry at the office of the sheriff, chief of police, and principal internal revenue officer in the locality in which the person who owns the vehicle resided at the time and to have been given a negative answer to the question as to whether such person has such record or reputation. In the case at bar there is no evidence that any such inquiry was made prior to the purchase of the notes and mortgage upon the truck in controversy. The claimant contends that this was unnecessary because there was no element of suspicion in any way attaching to the owner, Boyd, in connection with the violation of any liquor laws and that a full and complete investigation was made concerning his credit rating in which there was no intimation that he was a liquor law violator; and, furthermore, that the evidence of the government is insufficient to show that he had either a record or reputation as a bootlegger.

■ I think it was the intent and purpose of this law, in the light of the previous

legislation upon the subject and the decisions of the courts thereon, that every person or corporation dealing in vehicles or securities thereon are required to make the required preliminary investigation set out by the statute or suffer the consequences of being adjudged not an innocent holder in the event the owner of the vehicle should turn out to have the record or reputation of a person engaged in the violation of the liquor laws. A less stringent construction of the new act would leave many loopholes by which the necessarily rigid regulations surrounding the enforcement of the internal revenue laws might be avoided. If the matter be left open to the mere want of suspicion or the lack of inquiry concerning the character of an owner, the burden placed upon the claimant might be easily shifted. Nor, in my opinion, will the strict following of the letter of the law as here construed impose severe hardship on those engaged in handling transactions concerning motor vehicles. In the first place, only an infinitesimally small percentage of people purchasing automobiles have any record or reputation as bootleggers. The vast majority of people who purchase cars are known in the communities in which such purchases are made as honest, law-abiding citizens, and in such cases the hazard of not making a pre-investigation as required by the law would be nil. Again, if the person who purchases is not well known, an investigation in regard to credit responsibility is usually made, as was done in the case at bar. There can be no overpowering hardship if an investigation as to credit liability be extended so as to include the record or reputation concerning the violation of federal or state liquor laws. After all, in the final analysis, the new law now gives innocent parties some relief in case they elect to deal in automobiles, whereas before its enactment they had none.

The theory of the claimant that the record or reputation of Boyd as a violator of the liquor laws was not established by the government in the light of the definitions of reputation cannot be sustained. It is probably true that bootleggers are not generally known by reputation as such in the communities in which they operate, because such operations are usually in secret and known only to the few who patronize them, those who benefit through their operations or to the authorities who are engaged in attempting to apprehend them. The inference which naturally flows from the act itself is, that such knowledge will probably be found with those charged with the enforcement of the laws.

The lower federal courts have in a number of instances passed various views in the construction of this act, and, while the circumstances in several of the cases are different from those in the case at bar, the general consensus of those opinions seems to be to hold claimants strictly to the performance of the obligations required by the statute if they are to establish themselves as entitled to relief. Although perhaps not exactly in point on the facts here, some of these cases follow: United States v. One Studebaker Coupe, 13 F.Supp. 619 (D.C.Iowa.); United States v. One Ford V-8 Coach, 14 F.Supp. 243 (D.C.Ill.); United States v. One Plymouth Coupe, 14 F.Supp. 610 (D.C.Md.); United States v. One LaFayette Coupe, 14 F.Supp. 1003 (D.C.Ky.).

In a recent case, C. I. T. Corporation v. United States, 86 F.(2d) 311, 312, decided November 9, 1936, the Circuit Court of Appeals of the Fourth Circuit seems to have decided that, where an inquiry was made involving the question, "Have you ever used a car or do you intend to use above car to transport alcoholic beverages, or have you had any difficulty respecting prohibition or enforcement laws?" the answer to which was left blank, the corporation was thereby put upon notice and, not investigating further in ascertaining why the question was not answered, had thereby failed to establish itself under the provisions of the act as having satisfied the provisions of subdivision (b) (2) of the act (27 U.S.C.A. § 40a (b) (2) relating to the matter of knowledge or reason to believe that the vehicle was being used or would be used in violation of the liquor laws. Certainly such a construction carries the duty of the claimant to the last degree in compliance with the act, where, after full investigation, the mere absence of an answer to a single question in such inquiry places the claimant in a position of not having fully complied with the law.

For the reasons stated, the petition of the intervener Securities Investment Corporation for remission or mitigation of the forfeiture cannot be sustained. Findings of fact, conclusions of law, and a decree of forfeiture and overruling and dismissing the claims of the interveners may be submitted by counsel for the plaintiff on

or before January 8, 1937, with costs to libelant, and reserving proper exceptions to interveners.