522 F.2d 1369
 William O. DORE, bringing the following action on his own
behalf, and on behalf of all other persons
similarly situated, Plaintiff-Appellant,
v.
Thomas J. KLEPPE, as administrator of the Small Business
Administration, Defendant-Appellee.
 No. 74-1614.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 14, 1975.
 
 Patrick D. Breeden, New Orleans, La., Joseph E. Defley, Jr., Port Sulphur, La., for plaintiff-appellant.
 Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., Robert E. Kopp, Stanton R. Koppel, Atty., Dept. of Justice, Washington, D. C., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 From September 7-10, 1965 the Gulf Coast states of Mississippi, Louisiana, and Florida were hit by Betsy, a severe hurricane. In response to humanitarian demands and in aid of the extensive loss of property in those states Congress passed the Southeast Hurricane Disaster Relief Act of 1965, Pub.L. 89-339, 79 Stat. 1301, which was signed into law by President Johnson on November 8, 1965. The Act provided for forgiveness of a portion of disaster loans obtained from the Small Business Administration (SBA),[1] to those who had suffered property loss because of Betsy's high winds and wind-driven waters.[2] Among those receiving loans were Ethel Pottharst and William Dore.
 
 
 2
 This controversy, still raging in the tenth year after the turbulent winds subsided, centers around the forgiveness provisions. The Act provides for cancellation of up to $1,800 after payment of the first $500[3] of the loan. The SBA interpreted this language to mean that the first $1,000 above $500 is forgiven in full, but only 50% Of the loan above $1,500 is forgiven up to a total cancellation of $1,800. William Dore brought a class suit challenging this interpretation of the forgiveness provision. This action was brought on behalf of a class "composed of all those who borrowed more than $1,500.00 but less than $3.100.00 from the (SBA) pursuant to the (Act) * * * and who were not granted full forgiveness of up to $1,800.00 on that portion of their loans in excess of $500.00."[4] Under the SBA approach the full $1,800 would be forgiven only with a loan of $3,100 whereas plaintiffs claim that a loan of $2,300 should receive the full $1,800 forgiveness.
 
 
 3
 The SBA moved to dismiss the suit on the basis of sovereign immunity, administrative discretion, and statute of limitations.[5] The District Judge granted the SBA's motion on the grounds that the action was barred by the statute of limitations and by res judicata. We reverse.
 
 
 4
 Although the Government had never pleaded the affirmative defense of res judicata, F.R.Civ.P. 8(c), the District Court held that those plaintiffs who were part of the class in an earlier suit, Pottharst v. SBA, E.D.La., 1971, 329 F.Supp. 1142, were barred from raising the present issue in new litigation. In Pottharst the plaintiff borrowers sued the SBA over its interpretation of the phrase "to the extent such loss is not compensated for by insurance or otherwise" (emphasis added), also part of § 3 of the Betsy Act of 1965.[6] The Pottharst plaintiffs argued that any Uninsured loss, whether or not insurable, was covered by the Act. The SBA contended that only uninsurable losses were eligible for the forgiveness provision. It should not have been surprising to anyone conscious of the humanitarian motives for such legislation that Judge Rubin rejected this artificial reading by the SBA, reminiscent of some fine print insurance policy contentions.[7]
 
 
 5
 Dore was part of the Pottharst class. After the Pottharst decision holding that his uninsured but insurable loss was eligible for the forgiveness provision, Dore was notified in August 1972 that $1,250 of his $2,000 loan was forgiven. He then brought the present suit in a representative capacity claiming that $1,500 of his loan should be forgiven under the Act.
 
 
 6
 On appeal Dore claims (i) that for purposes of limitation the Act's termination on January 1, 1967[8] does not limit the accrual of actions to that date and (ii) that because Pottharst involved an agency interpretation of a separate part of the statute, res judicata is not applicable. The Government contends that the plaintiffs are barred by the 6-year Statute of Limitations, that res judicata was properly applied, and that the SBA had discretion to interpret the statute as it did.
 
 
 7
 Although, guided by Judge Rubin's fine opinion in Pottharst, we intend to reach the merits of the issue, we first are faced with the threshold question whether the claim is barred by the Statute of Limitations, res judicata, or both. We hold that it is not.
 
 The Statute of Limitations
 
 8
 The District Judge held that all rights under the Act accrued no later than January 1, 1967 and that the subsequent forgiveness "merely recognized rights which accrued previously.[9] " While fully agreeing that plaintiffs should be diligent in the filing of their claims, we are unable to accept the position that in the use of such language Congress intended that no claim could accrue after this date. Since many loans were for a period of 30 years the Government should have predicted problems for 30 years in their adjustment.[10] It does not make sense to conclude that a recipient of the loan could not bring any suit on that loan after January 1, 1973, six years after termination of the Act. What if the administrator failed to make a refund or took some other adverse action concerning an outstanding loan, all within the term period of the loan but more than six years after January 1, 1967? Would the loan recipient be barred by the Statute of Limitations from seeking a judicial determination of this action? Surely this was not the congressional intent. Indeed § 7 of the Act states that the Act will continue to be in effect after January 1, 1967, "with respect to payment of expenditures for obligations and commitments entered into under this Act * * *." If payments are to continue after January 1, 1967, certainly a claim regarding those payments can accrue after that date.
 
 
 9
 The general rule is that a cause of action accrues when the alleged wrong occurs, which is when the plaintiff has a right to enforce his claim. See United States v. One 1961 Red Chevrolet Impala Sedan, 5 Cir., 1972, 457 F.2d 1353, 1358. As this Court has stated previously "(i)t is axiomatic that before a statute of limitations can begin to run there must be a right of action on which it is to run." United States v. First National Bank of Atlanta, 5 Cir., 1971, 441 F.2d 906, 909 n. 1. Here Dore because of erroneous administrative actions had no right to forgiveness until the decision in Pottharst (1971), and he could not know with any assurance of certainty the amount of forgiveness that the SBA would grant until he received notification of his loan status in August of 1972. We are unable to understand how Dore could have had a cause for relief before this latter date.
 
 
 10
 The District Judge stated that "all claims arising from the Southeast Hurricane Disaster Relief Act of 1965 are now barred by the Statute of Limitations." As we have explained above this surely is not true for those plaintiffs who were members of the Pottharst class and therefore did not know of their rights of forgiveness until June 23, 1971. It also is not true as to plaintiffs in the present suit who were not in the Pottharst class, either expressly or impliedly, because there was no showing that any of them had fully terminated their loans before May 1967, six years before the filing of the present action. The right to sue to overcome the consequences of the administrative determination accrued to each plaintiff when the final determination of each loan was made.
 
 
 11
 Dore argues, in addition, that the limitations issue was decided in Pottharst and therefore cannot be relitigated by the SBA. Because we hold that the cause of action could and did accrue after the termination date of the Act we need not rely on collateral estoppel. We point out, however, that in Pottharst Judge Rubin found only that the fact that the Act was now terminated did not bar relief under it. The Pottharst action was filed within 6 years of January 1, 1967, and there was no real argument that the 6-year Statute of Limitations barred the action.
 
 Res Judicata From Pottharst
 
 12
 We now consider the District Judge's finding that those plaintiffs who were members of the Pottharst class are barred from the present action by res judicata. The general rule is that a final judgment is conclusive on the parties as to all questions of fact and law relevant to the same cause of action which were or could have been litigated in the prior proceeding. Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898, 905; Aerojet-General Corp. v. Askew, 5 Cir., 1975, 511 F.2d 710, 718; Carr v. United States, 5 Cir., 1975, 507 F.2d 191, 193.
 
 
 13
 The key to deciding whether res judicata applies is a determination of whether the second suit involves the same cause of action as the prior litigation. Acree v. Air Line Pilots Association, 5 Cir., 1968, 390 F.2d 199, 201, Cert. denied, 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122. If the cause of action is different in the second suit the parties are estopped from relitigating only those issues actually and necessarily decided in the first suit. Cromwell v. County of Sac, 1877, 94 U.S. 351, 24 L.Ed. 195; Maher v. City of New Orleans, 5 Cir., 1975, 516 F.2d 1051, 1055; Hyman v. Regenstein, 5 Cir., 1958, 258 F.2d 502, 510, Cert. denied, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575; 1B Moore's Federal Practice P 0.441(1), (2) (1974); A. Scott, "Collateral Estoppel by Judgment," 56 Harv.L.Rev. 1, 29 (1942); R. von Moschzisker, "Res Judicata," 38 Yale L.J. 299, 301 (1929).
 
 
 14
 This Court recently discussed at length the problems of deciding whether the cause of action in one suit is identical to that in another, Stevenson v. International Paper Co., 5 Cir., 1975, 516 F.2d 103, 109-10. In making this decision it should be remembered that res judicata is a principle of public policy and should be applied so as to give rather than deny justice. 56 Harv.L.Rev., Supra, at 1, 29. In this Circuit the principal test for determining whether the same cause of action is involved is deciding whether the primary right and duty and the delict or wrong are the same in each action. Wasoff v. American Automobile Insurance Co., 5 Cir., 1971, 451 F.2d 767, 769; Seaboard Coast Line Railroad Co. v. Gulf Oil Corp., 5 Cir., 1969, 409 F.2d 879, 881.
 
 
 15
 Here the members of the Dore class are alleging the infringement of a different right by a different wrong. In Pottharst the right to any forgiveness was infringed by the SBA's unwarranted interpretation of "not compensated for by insurance." In Dore the right to full forgiveness of up to $1,800 is infringed by the SBA policy of 50% Forgiveness after the first $1,000. In addition, the same evidence is not supportive of both actions because separate phrases, albeit of the same statute, require interpretation.
 
 
 16
 Considering all of the tests that have been presented for determining the identity of causes of action, Stevenson, supra, at 109; Acree, supra, at 201; 1B Moore's Federal Practice P 0.410(1), p. 1158 (1974); " Developments in the Law Res Judicata," 67 Harv.L.Rev. 818, 825 (1952), we are unable to find here that the question of calculating the amount of forgiveness of the loan was in any way involved in the earlier decision on the meaning of the language concerning insurance.
 
 
 17
 Certainly it was possible for the Pottharst plaintiffs to seek a declaratory judgment on the amount of forgiveness, assuming, as it turned out, they would obliterate the administrator's unacceptable reading about insurance. But the federal rules do not require this, F.R.Civ.P. 18, and we will not require it by any such harsh, and erroneous, application of the doctrine of res judicata. Rule 18 merely permits the joinder of other claims against the same party, but, faced with a very real controversy, the pleader, to flee from res judicata, need not dream up all the imaginable disputes with the adversary dependent on the outcome of the then controversy and as to which predictions on consequential impact would involve theorizing on hypotheticals.[11]
 
 
 18
 In addition we emphasize that Pottharst was a class action. It is wise policy to encourage manageability of class suits by limiting both the size of the class and the complexity of the litigation. See Eisen v. Carlisle & Jacquelin, 1974, 417 U.S. 156, 181, 94 S.Ct. 2140, 40 L.Ed.2d 732, 750 (Douglas, J., dissenting in part); Note, 67 Harv.L.Rev. 1059, 1065 (1954). In fact Rule 23(c)(4) permits the division of any action into subissues or subclasses so as to increase manageability. See the excellent discussion of manageability and the use of subclasses by Judge Thornberry in United States v. United States Steel Corp., supra, at 87-88. See also Huff v. N. D. Cass Co., 5 Cir., 1973, 485 F.2d 710, 713.
 
 
 19
 While we consider the causes of action in Pottharst and Dore to be distinct, the Rule 23 provision for separability indicates the importance of maintaining manageable units for determination. If we were to penalize both those plaintiffs not joined in Pottharst and those who were, because a separate issue of statutory construction was not raised originally, we would be encouraging class plaintiffs to bring in all conceivable future issues and parties, in direct opposition to the intent of Rule 23(c)(4). See Nix v. Grand Lodge of International Association of Machinists & Aerospace Workers, 5 Cir., 1973, 479 F.2d 382, 385, Cert. denied, 414 U.S. 1024, 94 S.Ct. 449, 38 L.Ed.2d 316 (1973); Proposed Rules of Civil Procedure, 1966, 39 F.R.D. 69, 106; 7A C. Wright and A. Miller, Federal Practice & Procedure § 1790 (1972).
 
 On Merits Government's Claim Meritless
 
 20
 On the merits the SBA argues that the Act granted the agency discretion in granting forgiveness up to the statutory maximum. In considering this argument we are guided by Judge Rubin's opinion in Pottharst, not because it is res judicata, but because the principles expressed there, in regard to construction of disaster relief legislation, are equally applicable here. We look first to the words themselves and consider their literal meaning. Section 3 of the Act states that the SBA "Shall at the borrower's option on that Part of any loan in excess of $500, (A) cancel Up to $1,800 of the loan, or (B) waive interest * * * of Not more than $1,800 * * * " (emphasis added). There is no indication that the first $1,000 is to be cancelled outright, but only 50% Forgiven above that. The words "up to" and "not more than" are included because many loans were not as large as $2,300 ($500 plus $1,800). Therefore on a loan of $2,000, such as Dore's, only $1,500 can be cancelled. The $1,800 sets an upper limit and the amount of the loan sets the lower limit.
 
 
 21
 It is true that the legislative history, Senate Report No. 917, 89th Congress, First Session, page 3; House Report No. 1164, 89th Congress, First Session, page 3 indicates an intention that the agency have discretion. But when the statutory language is clear we need not look to legislative history. Greenwood v. United States, 1956, 350 U.S. 366, 374, 76 S.Ct. 410, 415, 100 L.Ed. 412, 419; United States v. Great Northern Railway Co., 1952, 343 U.S. 562, 575, 72 S.Ct. 985, 993, 96 L.Ed. 1142, 1151; Pottharst, supra, at 1144.
 
 
 22
 We are unable to find any justification, either in the SBA briefs or at oral argument, for the Government's position. The statute is clear that each eligible recipient of a loan is to receive forgiveness for so much of his or her loan up to $1,800, as exceeds $500. The SBA has no discretion to go against the clear words of the law.
 
 
 23
 The erroneous nature of the SBA's interpretation is further indicated by the fact that the agency granted 100% Forgiveness, "up to $1,800.00," under the Disaster Relief Act of 1969, Pub.L. No. 91-79, 83 Stat. 125. The relevant text of the two Acts differs slightly,[12] but the intent is the same. The major difference is the use of "shall not exceed," in the 1969 Act rather than "up to" in the 1965 Act. If one needs reasons to explain this slight difference it can be argued that perhaps Congress used the different terminology in the 1969 Act to assure that the agency would not misread its intent as had happened in 1965.
 
 
 24
 Finally, we are convinced of the correctness of our view of the merits by consideration of the objectives and spirit of the legislation. In its first paragraph the 1965 Act states:
 
 
 25
 That the Congress hereby recognizes that the States of Florida, Louisiana, and Mississippi suffered extensive property loss and damage as a result of Hurricane Betsy in 1965 (including, but not limited to, loss and damage from flood, high waters, and wind-driven waters caused by such hurricane) and that there is a need for special measures designed to aid and accelerate these States in their efforts to provide for the reconstruction of highways and public works projects and to otherwise rehabilitate these devastated areas.
 
 
 26
 The Act was passed to alleviate great financial loss and allow those who suffered the severest buffeting from Betsy an opportunity to rebuild. It is out of keeping with this beneficent purpose to read words expressing a maximum dollar amount as the investment of wide discretion in the administrator to give here, but withhold there.
 
 
 27
 Thus hopefully, a decade after she hit, Betsy becomes legal history as well.
 
 
 28
 Reversed and remanded.
 
 
 
 [1]
 The loans, which may not exceed thirty years, are provided for under § 7(b)(1) of the Small Business Act, 15 U.S.C.A. § 636(b)
 
 
 [2]
 The information paper on the Betsy Act supplied by the SBA explained:
 ELIGIBILITY
 Q. Who is eligible for forgiveness of part of a loan?
 A. Most Betsy victims who suffered more than $500 loss from floods, high waters, or wind-driven waters. Those eligible include individuals, business concerns, fishermen, churches and other nonprofit organizations, and parochial and privately-owned schools, colleges, and universities.
 Q. What about farmers?
 A. They are eligible for similar forgiveness, but on loans made by the Farmers Home Administration. They should apply to that agency.
 Q. What about oyster planters?
 A. They, too, apply to the Farmers Home Administration.
 
 
 [3]
 Sec. 3. In the administration of the disaster loan program under section 7(b)(1) of the Small Business Act, as amended (15 U.S.C. 636(b)), in the case of property loss or damage in the States of Florida, Louisiana, and Mississippi resulting from Hurricane Betsy, the Small Business Administration, to the extent such loss or damage is not compensated for by insurance or otherwise, (1) shall at the borrower's option on that part of any loan in excess of $500, (A) cancel up to $1,800 of the loan, or (B) waive interest due on the loan in a total amount of not more than $1,800 over a period not to exceed three years; and (2) may lend to a privately owned school, college, or university without regard to whether the required financial assistance is otherwise available from private sources, and may waive interest payments and defer principal payments on such a loan for the first three years of the term of the loan
 
 
 [79]
 Stat. 1301, § 3
 
 
 [4]
 Plfs. complaint, App. 3
 
 
 [5]
 The SBA claimed that since the Act expired on January 1, 1967, any action must be brought within 6 years, the limitation period for civil actions against the United States. 28 U.S.C.A. § 2401. Dore did not bring this action until May 10, 1973, more than 6 years after expiration of the Act
 
 
 [6]
 See note 3, supra
 
 
 [7]
 The Judge considered the statutory language clear that any uninsured loss was covered and that if Congress had intended the provision to apply only to uninsurable losses it would have clearly so stated. Pottharst, supra, at 1144
 
 
 [8]
 Sec. 7. This Act, other than sections 5 and 6, shall not be in effect after January 1, 1967, except with respect to payment of expenditures for obligations and commitments entered into under this Act on or before such date
 
 
 [79]
 Stat. 1302, § 7
 
 
 [9]
 Unpublished memorandum opinion of J. Christenberry, filed Nov. 29, 1973
 
 
 [10]
 Dore's loan was to be repaid no later than Jan. 5, 1974. See loan agreement reproduced App. 24
 
 
 [11]
 See United States v. United States Steel Corp., 5 Cir., 1975, 520 F.2d 1043, 1048; Byers v. Byers, 5 Cir., 1958, 254 F.2d 205, 208-09
 
 
 [12]
 Section 7(1) of the 1969 Act states:
 (1) to the extent such loss or damage Is not compensated for by insurance or otherwise, (A) shall at the borrower's option on that part of any loan in excess of $500 cancel (i) the interest due on the loan, or (ii) the principal of the loan, or (iii) any combination of such interest or principal except that the total amount so canceled Shall not exceed $1,800, and (B) may defer interest payments or principal payments, or both, in whole or in part, on such loan during the first three years of the term of the loan without regard to the ability of the borrower to make such payments.
 whereas § 3 of the 1965 Act says:
 Sec. 3. In the administration of the disaster loan program under section 7(b)(1) of the Small Business Act, as amended (15 U.S.C. 636(b) ), in the case of property loss or damage in the States of Florida, Louisiana, and Mississippi resulting from Hurricane Betsy, the Small Business Administration, To the extent such loss or damage is not compensated for by insurance or otherwise, (1) shall at the borrower's option on that part of any loan in excess of $500, (A) cancel Up to $1,800 of the loan, or (B) waive interest due on the loan in a total amount of Not more than $1,800 over a period not to exceed three years.