AMERICAN CYANAMID COMPANY, a Maine Corporation, Plaintiff-Appellant,

v.

MISSISSIPPI CHEMICAL CORPORATION, a Mississippi corporation, Defendant-Appellee.

No. 85–3918.

United States Court of Appeals, Eleventh Circuit.

May 14, 1987.

Diana L. Fuller, Smith, Fuller & Dolcimascolo, Tampa, Fla., for plaintiff-appellant.

M. David Bryant, Jr., John J. Little, Hughes & Hill, Dallas, Tex., Benjamin H. Hill, III, Hill, Ward & Henderson, Tampa, Fla., for defendant-appellee.

Before VANCE and ANDERSON, Circuit Judges, and KING *, District Judge.

ANDERSON, Circuit Judge:

American Cyanamid Company ("Cyanamid") appeals from the district court's order granting summary judgment to Mississippi Chemical Corporation ("MCC"). We affirm.

## I. BACKGROUND

MCC contracted with Cyanamid to purchase phosphate rock to be used in the production of fertilizer. The contract contained five relevant provisions: (1) that the contract was to run from January 1, 1982 until December 31, 1982; (2) that the rock was to be shipped in twelve equal monthly installments; (3) that New Jersey law was to apply; (4) that a contractually imposed one-year statute of limitations would govern all actions for breach of the contract; and (5) that the contract could not be modified except by express written agreement between the two parties.

Because of a downturn in the farm economy, MCC did not require as much phosphate rock as it first thought it might need. Consequently, by letter dated September 3, 1982, MCC informed Cyanimid that it would be able to consume only "forty-five percent of the quantity of phosphate rock previously budgeted." Exh. 1. Thereafter, on December 22, 1982, MCC again informed Cyanamid that "we simply cannot purchase from American Cyanamid any more phosphate rock than that expressed in my letter of September 3, 1982." Exh. 5.

On March 2, 1984, Cyanamid brought suit to recover damages for MCC's breach of contract. The March 2, 1984 date was facially more than one year after both of MCC's letters repudiating its obligation. Consequently, MCC claimed that Cyanamid's suit was barred by the contractual statute of limitations. Cyanamid replied, however, that two letters exchanged between the parties at the time of the signing of the contract had the effect of modifying the contract and extending it into mid–1983. Thus, Cyanamid argued, its suit was timely since it was brought within one year of the end of the contract's extended term.

* Honorable James Lawrence King, Chief U.S. District Judge for the Southern District of Florida.

The district court granted summary judgment to MCC. It concluded, first, that New Jersey law would not have recognized the alleged modification of the contract and thus that the contract terminated on December 31, 1982. As an alternate ground, the district court concluded that MCC had anticipatorily breached the contract no later than December 22, 1982. The court thus reasoned that, upon either of two grounds, Cyanamid's cause of action for breach of contract accrued more than a year before Cyanamid sued. Consequently, Cyanamid's suit was not timely. On appeal, Cyanamid contends that both determinations of the district court were erroneous.

## II. DISCUSSION

For purposes of this discussion, we need not address both issues. Indeed, we assume *arguendo*, without deciding, that the letters exchanged by the two parties did effectively modify the contract so as to make its termination date sometime in mid–1983. We conclude, nonetheless, that MCC's two letters to Cyanamid dated September 3 and December 22, 1982 amounted to an anticipatory breach and that Cyanamid's cause of action accrued at that time. Consequently, we agree with the district court in its determination that Cyanamid's suit was barred by the contractual statute of limitations.

■ The parties are agreed that New Jersey law controls in this diversity case. Clearly, under New Jersey law, MCC had anticipatorily breached its contract with Cyanamid. An anticipatory breach is any action which "under a fair reading ... amounts to a statement of intention not to perform except on conditions which go beyond the contract." N.J.Rev.Stat. § 12A:2–610, Uniform Commercial Code Comment 2. Thus, a statement by a party that he will not or cannot perform in accordance with the agreement creates an anticipatory breach. It cannot be gainsaid

that the two letters sent by MCC to Cyanamid amounted to such a breach.

Under New Jersey law, a cause of action accrues and the statute of limitations begins to run upon the date when a right to institute and maintain a suit first arises. *Rosenau v. City of New Brunswick*, 51 N.J. 130, 137, 238 A.2d 169, 172 (1968); *Hartford Accident & Indemnity Co. v. Baker*, 208 N.J.Super. 131, 504 A.2d 1250, 1252 (Law Div.1985); *see also Dore v. Kleppe*, 522 F.2d 1369, 1373 (5th Cir.1975)[1] (general rule is that a cause of action accrues when the plaintiff has a right to enforce his claim); *Equilease Corp. v. State Federal Savings & Loan Ass'n*, 647 F.2d 1069, 1073 (10th Cir.1981) (cause of action accrues at the moment a party has a legal right to sue); *cf.* N.J.Rev.Stat. § 12A:2–725(2) (cause of action accrues "when the breach occurs").

Moreover, it is clear that under New Jersey law one has the right to sue a breaching party immediately upon an anticipatory breach. Thus, § 2–610 of New Jersey's commercial code, N.J.Rev.Stat. § 12A:2–610, gives a party the option of either suing or awaiting performance. It provides that:

> When either party repudiates the contract ... the aggrieved party may:
>
> (a) for a commercially reasonable time await performance by the repudiating party; or
>
> (b) resort to any remedy for the breach....

*Id.* Under this provision, Cyanamid could have sued immediately upon the breach by MCC. Applying the New Jersey rule that a cause of action accrues at the time a party has the legal right to sue, we conclude that Cyanamid's cause of action accrued at the time of the anticipatory breach. Thus, the statute of limitations began to run at that time, and Cyanamid's suit more than one year later was barred by the contractual statute of limitations.

■ Appellant Cyanamid argues that § 2–610 amounts to a legislative amend-

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

ment of the general rule that a cause of action begins to run from the moment suit can be brought. Cyanamid contends that, by giving a party the option of awaiting performance, § 2–610 also delays the commencement of the statute of limitations. We reject this argument. The section does no more than give a party the option of choosing the time at which it will pursue a remedy for the breach. This in no way alters the fact that a breach has occurred and a cause of action has accrued. Indeed, the purpose of § 2–610 in giving a party the option of awaiting performance was simply to overturn the harsh common law rule that one who urged the other party to perform after repudiation forever lost his right to complain of the repudiation. White & Summers, *Uniform Commercial Code*, § 6–7, at 248 (2d ed. 1980) (citing 11 Williston, *Contracts* § 1333 (3d ed. 1968)); *see also Hochster v. De La Tour*, 2 El. & Bl. 678, 118 Eng.Rep. 922 (1853).

Having rejected appellant's contention that their entire cause of action did not accrue until they had awaited performance (i.e., until the termination of the modified contract in mid–1983), we need only address one further concern. It is plausible to argue that, in an installment contract, the cause of action for breach of the contract is not unitary but that, rather, a separate cause of action arises for each defaulted portion of the installment agreement. Under this reading, Cyanamid might be able to recover for any damage which is directly derived from shipments of rock which should have occurred after March 2, 1983.

We note that in analogous cases New Jersey has sometimes adopted such a rule, deeming each individual breach to form the basis of a separate cause of action. In *N.J. Industrial Properties, Inc. v. Y.C. & V.L., Inc.*, 100 N.J. 432, 495 A.2d 1320 (1985), the Supreme Court of New Jersey held that, under a rental agreement, a landlord had a cause of action for defaulted rental payments which arose from each monthly obligation to pay rent. Rather than requiring the landlord to wait until the termination of the lease agreement to ascertain his losses,

the court, in effect, permitted him to sue for each monthly deficiency.

However, the result in *N.J. Industrial Properties* is premised upon the presence of a severability or survival covenant in the lease contract. The court noted that in other cases where such a clause was not present the damages arising from the breach of the lease would form the basis for only a single cause of action. 495 A.2d at 1325–26. By analogy, we think that New Jersey courts would hold that the anticipatory breach of an installment contract creates a single unitary cause of action, at least unless the parties have mutually agreed that a severable cause of action arises for each defaulted installment. *See* 4 Corbin, *Contracts* § 989 ("When ... a breach by actual non-performance is committed and it is accompanied by a definite repudiation of the balance, according to the weight of authority there is a total breach by the repudiation, creating in the injured party a single right of action.").

For the foregoing reasons, the order of the district court granting summary judgment to MCC is

AFFIRMED.