**FERTILIZER CORPORATION OF AMERICA, Plaintiff,**

v.

**P.S. INTERNATIONAL, INC., d/b/a and a/k/a P.S. International, Ltd., Defendant.**

No. 88–0383–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Oct. 31, 1989.

George Mencio, Jr., Holland & Knight, Miami, Fla., for plaintiff.

Leonard Opperman, Indianapolis, Ind., for defendant.

## ORDER ON PENDING CROSS MOTIONS FOR SUMMARY JUDGMENT

RYSKAMP, District Judge.

THIS CAUSE is before the court upon the parties' cross-motions for summary judgment. Summary judgment will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment at a matter of law. *Fed.R.Civ.P.* 56(c). For the reasons that follow, plaintiff's motion for summary judgment will be granted and defendant's motion must be denied.

## I. UNDISPUTED FACTS

Defendant P.S. International, Inc. ("PSI") agreed to sell 10,000 metric tons of di-ammonium phosphate ("DAP") at US $180 per metric ton ("pmt") to plaintiff Fertilizer Corporation of America ("FCA") on terms "FOB" Gabes, Tunisia. FOB stands for "Free on board" and means that seller must deliver the goods aboard a certain vessel for shipment from a specified port. It is buyer's obligation to present a suitable vessel and to notify seller of the ship's estimated time of arrival. Generally, a buyer will contract with a vessel for certain "lay days," or the estimated dates the ship will be in the port, subject to "stem," or the time frame within which the seller will have the goods ready for delivery at the designated port. The ship is not actually chartered until the seller confirms stem. Buyer must apprise seller of the ship's lay days and seller will then confirm stem.

The parties did not specify a date for delivery and there is no explicit contractual provision stipulating that time was of the

essence. Rather, the agreement provided for shipment within 45 days after PSI received a letter of credit from FCA. Although PSI received the letter of credit November 30, 1987, it was later amended to extend its validity until February 23, 1988 and to permit shipment by February 2, 1988.

In late December, the parties exchanged lay days and stem, but were unable to reach agreement. On three separate occasions, FCA presented vessels with lay days in January, but PSI was unable to confirm stem before the ships were lost to other business. Finally, the vessel M/V SECURITAS was booked with lay days of January 19–25, 1988, given a previously reported stem confirmation of January 15–25, 1988. But, on January 25th, PSI was informed that the SECURITAS was delayed because of rain and was not estimated to arrive in Gabes until January 27, 1988. PSI agreed to attempt to extend stem. On January 26th, PSI informed FCA that it was unable to extend stem and FCA cancelled its agreement with the M/V SECURITAS.

The price of DAP had increased dramatically between November and late January. On January 28th, PSI told FCA that it would not supply DAP under the agreement, but offered to supply FCA with DAP at US $215 pmt. FCA obtained cover at a cost of $247,500.00 plus interest. FCA sued for breach of contract alleging anticipatory repudiation. PSI counterclaimed for breach of contract. The parties have engaged in substantial discovery and have each filed motions for summary judgment with Local Rule 10J statements of material fact.

## II. CONCLUSIONS OF LAW

### A. *Valid contract*

Both FCA and PSI agree that they entered into a binding contract and that this transaction is regulated by Article II of the Uniform Commercial Code. *Larsen v. A.C. Carpenter, Inc.*, 620 F.Supp. 1084 (D.C.N.Y.1985). The case law supports their conclusion that a contract is not invalid merely because the parties failed to specify an exact time for delivery. *Dura–Wood Treating Co. v. Century Forest Industries, Inc.*, 675 F.2d 745, 751 n. 5 (5th Cir.), *cert. denied*, 459 U.S. 865, 103 S.Ct. 144, 74 L.Ed.2d 122 (1982). Unlike the factual circumstances presented in *Fabrica Italiana Lavorazione Materie Organich, S.A.S. v. Kaiser Aluminum & Chemical Corp.*, 684 F.2d 776 (11th Cir.1982), there is no question in this case as to the existence of a contract and its terms, and therefore, no issue for a jury to decide. The delivery term was left open. The relevant UCC provision, at § 672.1–204(1) of the Florida Statutes, establishes that delivery shall be within a reasonable time if that term is left open at the time of contracting.

Plaintiff FCA argues the contract permitted it to present a ship at the port in Gabes prior to February 2, 1988 and even after that time if it was reasonable. The seller, PSI, contends that, by confirming stem for the period of January 15–25, it filled in the open contract term. It asserts that time was of the essence in this contract and that the parties agreed that the DAP must be on board, ready for shipment, on January 25, 1988.

### B. *Time of the essence*

■ Under Florida law, time will be considered of the essence in a contract in three circumstances:

(1) where there has been an explicit recital by the parties; (2) where the treating of time as a non-essential would produce a hardship, and delay by one party in completing or in complying with a term would necessarily subject the other party to a serious injury or loss; and (3) where an express notice has been given by a party not in default to the other party who is in default, requiring the contract to be performed within a stated time, which must be a reasonable time according to the circumstances.

*Westcap Gov't Sec., Inc. v. Homestead Air Force Base Federal Credit Union*, 697 F.2d 911, 914 (11th Cir.1983), *citing Blaustein v. Weiss*, 409 So.2d 103 (Fla. 4th DCA 1982). In this case, however, there is no explicit recital by the parties, nor is there

any indication that delay would subject the other party to serious injury or loss. On January 8th, PSI told FCA that its supplier was requesting stem for January 15–25 and that it could not afford to change stem again. Considering the context of the parties' dealings and the multiple exchange of lay and stem days, this seems to be only an expression of desire and is insufficient evidence of explicit notice that PSI was requiring FCA to present a ship by January 25 or the contract was terminated. Further, there is nothing to indicate that PSI could unilaterally set the delivery date by limiting when it would confirm stem.

The parties did agree that shipment would take place within 45 days after receipt of the letter of credit. But that time for shipment was later amended to February 2, 1988, under the letter of credit. Clearly the parties contemplated shipment from Gabes by February 2, but an exact date was never fixed. PSI's confirmation of stem cannot be said to provide enough notice to FCA that it was now required to strictly adhere to those dates.

PSI also argues that because the market for DAP is volatile, time should be considered to be of the essence. While it is true that where the subject matter of a contract is of a fluctuating or speculative value, it is often held that the parties have intended for time to be of the essence, *Siderius, Inc. v. Wallace Co., Inc.*, 583 S.W.2d 852, 864 (Tex.Civ.App.1979), the facts in this case do not support the same conclusion. The rule applied in *Siderius* has its genesis in contracts for the exercise of options, *see Southern Minerals, Corp. v. Simmons*, 111 F.2d 333, 336 (5th Cir. 1940), which are not involved here. In *Siderius*, it was applied to foreclose a two week extension after the time for delivery had already been extended by one and one half months. *Id.* This case only involves adjustments of the actual delivery date within the previously extended shipment date.

PSI has presented no evidence in support of its contention that "stem" dates unilaterally set the time for performance and transform a contract with open delivery terms into one where time is of the essence. Unreasonably early offers of or demands for delivery are merely expressions of desire and do not amount to a breach. *See Fla.Stat.* § 672.2–309, Uniform Commercial Code Comment 4. The parties' conduct and the facts surrounding this transaction can not be said to show that they intended that the delivery must be complete by January 25. In fact, PSI admitted it would attempt to extend stem from its supplier beyond January 25. If the parties ever agreed to an exact date by which the DAP must be shipped, it had to have been by February 2, 1989, the date stipulated under the letter of credit. The evidence indicates that actually PSI refused to proceed under the contract because the price of DAP had increased substantially. *See Westcap*, 697 F.2d at 913 n. 4. Under these agreed facts and unambiguous terms, the court must conclude, as a matter of law, that the parties did not consider time to be of the essence of this contract.

### C. The UCC gap-filling provision

■ The contract unambiguously left the exact date of delivery an open term. Therefore, pursuant to Section 672.2–309 of the Florida Statutes, FCA was required to present its vessel for shipment within a reasonable time. As evidence of a reasonable delivery date, the court has reviewed the written contract stating that delivery was to be within 45 days of receipt of the letter of credit or January 15. But the parties amended the letter of credit to permit delivery by February 2, and agreed to overlapping stem and lay dates of January 19–25, 1989, so January 15 could not be the final delivery date. A reasonable date of delivery was either by January 25, 1987 or by February 2, 1987.

As the court has already concluded, time was not of the essence in this contract. It was FCA's obligation as buyer to present a ship for loading within a reasonable time of either January 25 or February 2. PSI contends that it had no obligation to "extend stem" a third time. PSI mischaracterizes the nature of its duty under the contract. PSI was not obligated to "extend stem,"

but rather to engage in a good faith attempt to coordinate stem and lay dates in order to complete delivery. Neither PSI nor FCA could unilaterally set the date for delivery. Certainly, presenting a ship within three days of January 25 is reasonable considering the factual circumstances and the difficulties inherent in ocean transport. Because PSI deprived FCA of the opportunity to present the ship within the range of possible delivery dates, it is unnecessary for the court to determine what would be a reasonable date for delivery.

### D. PSI's anticipatory breach

On January 28, by stating that it would not supply DAP under the agreement, PSI anticipatorily breached the contract. *American Cyanamid Co. v. Mississippi Chemical Corp.*, 817 F.2d 91, 93 (11th Cir. 1987). PSI's offer to sell DAP at a higher price also amounts to an anticipatory repudiation. *See Fla.Stat.* § 627.2–610, Uniform Commercial Code Comment 2; *Jon–T Farms, Inc. v. Goodpasture, Inc.*, 554 S.W.2d 743, 746 (Tex.Civ.App.1977). It should have permitted FCA a reasonable time to fulfill its obligation to provide a vessel in Gabes to ship the DAP.

Section 672.2–610 of the Florida Statutes provides the various options available to a party when faced with an anticipatory breach. FCA properly suspended performance and obtained cover. *Fla.Stat.* § 672.2–711(1)(a).

### E. Damages

The evidence that FCA has presented in support of damages is insufficient and therefore that issue will be decided at trial.

## III. CONCLUSION

After a careful review of the pleadings and the court being fully advised in the premises, it is hereby:

ORDERED and ADJUDGED that plaintiff's motion for summary judgment is GRANTED in regard to liability. Defendant's motion for summary judgment is DENIED. This cause will proceed to trial on the issue of damages only.

DONE and ORDERED.